IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PHARMACYCLICS LLC and JANSSEN BIOTECH, INC. | ) ) ) | |
| Plaintiffs, | ) ) ) | C. A. No.: 18-192-CFC (CJB) (CONSOLIDATED) |
| v. | ) ) | |
| CIPLA LIMITED, et al., | ) ) | **REDACTED - PUBLIC VERSION** |
| Defendants. | ) ) | |
| PHARMACYCLICS LLC and JANSSEN BIOTECH, INC. | ) ) ) | |
| Plaintiffs, | ) ) ) | C. A. No.: 19-434-CFC (CJB) |
| v. | ) ) | |
| ALVOGEN PINE BROOK LLC and NATCO PHARMA LTD., | ) ) ) | **REDACTED - PUBLIC VERSION** |
| Defendants. | ) | |

**DEFENDANTS' OPENING LETTER IN SUPPORT OF
THEIR MOTION TO STRIKE PLAINTIFFS' UNTIMELY OPINIONS**

Dear Judge Burke:

Defendants Alvogen Pine Brook LLC, Natco Pharma Ltd. (together, "Alvogen"), and Zydus Worldwide DMCC and Cadila Healthcare Limited (collectively, "Defendants") respectfully move to strike the following untimely and prejudicial expert opinions[1]:

(1) an "antedating" theory, disclosed for the first time in Dr. Simon Rule's rebuttal expert report and the accompanying declaration of Dr. Joseph Buggy (the "Buggy Declaration"), which alleges that three asserted invalidity references do not constitute prior art;

(2) secondary considerations of non-obviousness theories provided for the first time in the expert reports of Drs. Paul Reider, Simon Rule, Allan Myerson, Fabia Gozzo, Robert Williams, David Drover, Pierre Cremieux, and Kenneth Cooke;

(3) a new interpretation of the claims of the asserted '857 Patent made for the first time in the rebuttal expert report of Dr. Robert Williams III;

(4) untimely theories addressing certain of Alvogen's 35 U.S.C. § 103 obviousness arguments, disclosed for the first time in the rebuttal expert report of Dr. Paul Reider; and

(5) new theories regarding indefiniteness, enablement, written description, and double patenting of the asserted '711, '091, '309, '090, '753, '455, and '548 Patents in the rebuttal reports of Drs. Reider, Myerson, and Rule.

Plaintiffs failed to disclose these positions during fact discovery, which they were obligated to do. That Plaintiffs withheld them until now is particularly egregious because Plaintiffs possessed the alleged facts underlying their untimely theories all along. Plaintiffs' late theories "forced [Defendants] to choose from two bad options: either scramble to have an expert respond in an effort to preserve an expert opinion . . . if the Court allowed them into the case; or offer no response and risk not preserving an opinion for trial if [Defendants'] Motion to Strike was denied." *Galderma Labs., L.P. v. Amneal Pharms., LLC,* 2018 WL 508876, at *2 (D. Del. Jan. 22, 2018). Exacerbating the prejudice, Plaintiffs continue to block Defendants' access to information that should have been disclosed long ago. D.I. 222, 424 at 2-4. It is too late to cure the prejudice Plaintiffs caused, and Defendants should not be forced now to divert resources to take fact discovery on untimely theories mere months before trial.

**A.  Plaintiffs' Untimely "Antedating" Theory:** The rebuttal report of Plaintiffs' expert Dr. Rule regarding the validity of the '090 Patent, relying on the May 18, 2020 Buggy Declaration, for the first time introduced an untimely argument disputing that three of Defendants' invalidity references constitute prior art.[2] *See* Appendix A, at A-2 and A-4. According to Dr. Rule's rebuttal report and the Buggy Declaration, the three asserted prior art references "are not prior art because they are disclosures of the inventors' own work and therefore are part of the original invention." Appendix A, at A-2, ¶ 202; Appendix A, at A-4 ¶ 5

---

[1] Appendix A attached to this Motion contains highlighted copies of the referenced opinions identifying which opinions Defendants ask the Court to strike. If Defendants seek to strike a document in its entirety, the cover page so indicates.

[2] Of the three prior art references that Plaintiffs attempt to antedate, Alvogen relies on Advani 2010 and December 2009 Press Release while Zydus relies on Advani 2010 and Roth 2010.

("the information described in these publications . . . is my own work and communicates the results of that work."). Plaintiffs were obligated to disclose the facts and theories underlying this new argument during fact discovery, not least because Plaintiffs bear the burden of production to show that the three references at issue are indeed Dr. Buggy's "own work."[3] Yet, Plaintiffs elected not to disclose this theory in response to Defendants' interrogatories.[4] Plaintiffs had ample opportunity to do so, as Defendants' November 2, 2018 initial invalidity contentions notified Plaintiffs of Defendants' position as to why the references in the Buggy Declaration are invalidating prior art. *E.g.*, Ex. 1, Excerpt of Initial Invalidity Contentions, at 117 (contentions regarding why Advani 2010 is prior art), 130 (contentions regarding why Pharmacyclics press release ("December 2009 Press Release") is prior art), 131 (contentions regarding why Roth 2010 is prior art). Moreover, the Buggy Declaration is purportedly based on his personal knowledge of the references in question—information which Plaintiffs no doubt were aware of given their numerous representations regarding Dr. Buggy's relevance to validity issues.[5] There is no excuse for Plaintiffs' untimely disclosure that could justify the extensive discovery required to begin curing the prejudice caused.

        **B.**        **Untimely Secondary Considerations of Non-Obviousness:** Plaintiffs likewise served voluminous untimely opinions regarding alleged secondary considerations of non-obviousness in the expert reports of Drs. Reider, Rule, Myerson, Gozzo, Williams, Drover, Cremieux, and Cooke. *See* Appendix A, at A-1, §§ V.B, VII, VIII, XIV; XV, XVI; A-2, § XVIII; A-3, §§ VI–IX; A-5, §§ IV.B, X; A-6, § XIV; A-7, §§ VIII–IX; A-8, §§ V.B, VIII; A-9, § X.D; A-10, §§ VII–IX, A-11–A-13; A-14, § IX.C; A-15–A-16; A-17, §§ IV.B, VII; A-18, § VII; A-19–A-20; A-21, §§ III.B, VI, IX; A-22, §VII. Plaintiffs were required to disclose these theories, and supporting facts and arguments, in response to Defendants' interrogatories, but chose not to at their own peril. Despite Plaintiffs' burden of production on secondary considerations[6], Plaintiffs did not, for example, relate any alleged secondary consideration to any

---

[3] *Allergan Inc. v. Apotex, Inc.*, 754 F.3d 952, 967 (Fed. Cir. 2014) (patentee bears burden to show that the disputed 102(a) references were in fact authored by the named inventor); *Mannesmann Demag Corp. v. Engineered Metal Products Co. Inc.*, 605 F. Supp. 1362, 1370 (D. Del. 1985), aff'd, 793 F.2d 1279 (Fed. Cir. 1986) (evaluating patentee's evidence that disputed reference described inventor's own work); *see also* D.I. 223, at 1 (quoting *Sandt Tech., Ltd. v. Resco Metal & Plastics Corp.*, 264 F.3d 1344, 1350 (Fed. Cir. 2001) (corroboration required for testimony "claiming his own prior inventorship" due to concern that inventor "might be tempted to describe his actions in an unjustifiably self-serving manner . . . .").

[4] Ex. 2, 12-06-19 Response to Interrogatory No. 6, at 4 (in response to interrogatory seeking identity of references that allegedly are not prior art, contending only that "Defendants have not demonstrated that any reference . . . 'qualifies as prior art'"); Ex. 3, 02-10-20 Fifth Supp. Response to Defendants' Interrogatories, at 5 (disclosing only (in relevant part) "Plaintiffs dispute that Defendants' asserted references are prior art.").

[5] *E.g.*, Plaintiffs listed Dr. Buggy in Paragraph 3 Disclosures as having information regarding "[i]nvention and subject matter of the '090 Patent," (Ex. 4, Initial Disclosures, at 3), made him a document custodian (*id.*), identified him as "involved in the conception and/or reduction to practice of the inventions . . ." (Ex. 3, 02-10-20 Fifth Supp. Interrog. Response, at 76) and produced him for a deposition, undoubtedly interviewing him in advance.

[6] *Scanner Techs. Corp. v. ICON Vision Sys. Corp. N.V.*, 528 F.3d 1365, 1380 (Fed. Cir. 2008) (rejecting post-trial motion challenging obviousness determination where "there simply was not much evidence of secondary indicia of nonobviousness for the court to consider and discuss,"

asserted claim, including any contentions addressing the nexus requirement or contentions that a product constituted a commercial embodiment of an asserted claim.[7] Alvogen repeatedly requested that Plaintiffs disclose these contentions during discovery, stating that Alvogen would seek relief from the Court if they attempted to belatedly interject theories. *See, e.g.*, Ex. 5, 02-17-20 Email from D. Hanna to Counsel; Ex. 6, 12-16-19 Email from D. Hanna (requesting meet and confer regarding deficient secondary considerations response); Ex. 7, 01-15-20 Ltr. from D. Hanna, at 6 (requesting supplementation of Plaintiffs' secondary considerations response). Plaintiffs refused. Ex. 8, 02-13-20 Email from C. Chanson to D. Hanna. It was not until the deadline for expert reports that Plaintiffs disclosed, in multiple expert reports, *hundreds* of pages of new secondary considerations theories, facts, and arguments. Plaintiffs' failure to provide notice of these theories during fact discovery significantly prejudiced Alvogen by forcing it to scramble to attempt to develop responsive positions during expert discovery and preventing Alvogen from meaningfully investigating Plaintiffs' positions.

**C. Plaintiffs' Untimely Construction of the '857 Patent Claims:** In Dr. Williams's rebuttal report, Plaintiffs disclosed a new interpretation of the '857 Patent claims in an untimely effort to distinguish one of Alvogen's prior art references, contending for the first time that the '857 Patent claims require "immediate release high-load solid tablet formulations . . . ." Appendix A, at A-14. Patent "claims must be interpreted and given the same meaning for purposes of both validity and infringement analyses." *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F. 3d 1343, 1351 (Fed. Cir. 2001). Yet, Plaintiffs failed to disclose their "immediate release" interpretation of the '857 Patent claims in response to the Scheduling Order deadlines for infringement and claim construction positions. *See* D.I. 137 at ¶¶ 5, 15; D.I. 163 (requiring initial and final infringement contentions by August 28, 2019 and January 22, 2020 (later extended to January 30, 2020), respectively, and lists of claim terms for construction by September 6, 2019); Ex. 9, 08-28-19 Initial Infringement Cont., at Ex. P; Ex. 10, 01-30-20 Final Infringement Cont., at Ex. P. Plaintiffs likewise failed to disclose their untimely claim interpretation in response to Alvogen's interrogatories. *See, e.g.*, Ex. 11, 12-20-19 First Supp. Responses to Alvogen's Interrogatories, at 2-3, 11-30.[8] Plaintiffs inexcusably withheld their

---

noting requirement that "[o]nce a challenger has presented a prima facie case of invalidity, the patentee has the burden of going forward with rebuttal evidence.").

[7] In response to interrogatory seeking (among other things) "the bases for your assertion that such alleged indicia of non-obviousness apply," Plaintiffs merely *identified* secondary considerations and provided generic descriptions, leaving Defendants to guess how they apply to the asserted claims. Ex. 3, 02-10-20 Pltfs. Fifth Supp. Interrog. Response, at 49-59, 67-72.

[8] Plaintiffs cannot justify their failure on the ground that Alvogen disclosed the reference in its January 30, 2020 final invalidity contentions. If Plaintiffs believed the '857 Patent claims were limited to "immediate release" formulations, they were obligated to disclose that position by the Scheduling Order deadlines for infringement and claim construction contentions. Regardless, Alvogen timely disclosed the reference during discovery in its final invalidity contentions. *See. e.g*., Ex. 12, 01-30-20 Final Invalidity Cont. for Non-Honigberg Patents, at 75-76. Despite Defendants' requests that Plaintiffs supplement their validity contentions, and Plaintiffs' obligation to timely supplement under Fed. R. Civ. P. 26(e), Plaintiffs' refused. Ex. 8, 02-13-20 Email from C. Chang to D. Hanna; *see also Lambda Optical Solutions, LLC v. Alcatel-Lucent USA Inc.*, C.A. No. 10-487-RGA, 2013 WL 1776104, at *2 (D. Del. Apr. 17, 2013) (A party breaches its duty to timely supplement its discovery responses if it fails to "provide[ ] adequate notice of its legal contentions and their corresponding evidentiary bases.").

claim interpretation until the rebuttal report deadline—an egregious discovery violation warranting exclusion of this opinion.

       **D.**      **Plaintiffs' Untimely Obviousness Rebuttal**: Dr. Reider's rebuttal report disclosed voluminous new arguments regarding alleged non-obviousness of the asserted '309, '711, and '091 patents (the "Compound Patents"). *See* Appendix A, at A-6. These opinions purport to rebut obviousness positions Defendants advanced throughout this case, including in their initial and final invalidity contentions, which describe how the Compound Patents are obvious in view of a compound disclosed in Hirst *et al.*, WO 2001/019829 A2 (namely, "Hirst Compound A"), and in view of 6 other prior art references, Schindler 1999, Mahajan 1999, Vassilev 2004, Uckun 2002, EP'039, and Mao 2001. Ex. 13, 01-30-20 Final Invalidity Cont. for Honigberg Patents, at 33-34, 39-43, 50-51. Plaintiffs withheld their positions regarding Hirst Compound A and these references during fact discovery, despite their obligation to disclose them in response to Defendants' interrogatory seeking Plaintiffs' validity contentions. *See, e.g.*, Ex. 3, 02-10-20 Plaintiffs' Fifth Supp. Interrog. Responses, at 8-18. Alvogen asked Plaintiffs to timely provide these positions, but Plaintiffs refused. Ex. 5, 02-17-20 Email D. Hanna to Counsel. That Plaintiffs could have addressed, but elected not to address, these arguments during discovery is evidenced (at least) by the fact that Plaintiffs' *did* attempt to rebut another asserted Hirst compound, Hirst Compound B. *Id*. These late disclosures are extremely prejudicial, depriving Defendants of the opportunity to investigate Plaintiffs' claims prior to service of expert reports.

       **E.**      **Plaintiffs' Untimely Section 112 and Double Patenting Arguments**: The rebuttal reports of Drs. Reider, Myerson, and Rule disclosed untimely theories regarding indefiniteness, enablement, written description, and double patenting of the '711, '091, '309, '090, '753, '455 and '548 Patents. *See* Appendix A, at A-2; A-6; A-9. These untimely opinions apparently attempt to rebut Defendants' initial and final invalidity contentions addressing these same issues. *See, e.g.*, Ex. 14, 08-28-19 Initial Invalidity Cont., at 81, 88, 89, 103, 105; Ex. 12, 01-30-20 Final Invalidity Cont. for Non-Honigberg Patents, at 82-84. Plaintiffs were required to disclose these positions in response to Defendants' interrogatory seeking Plaintiffs' validity contentions, but Plaintiffs withheld them until service of rebuttal expert reports, despite the fact that Defendants identified this deficiency during discovery and asked Plaintiffs to cure it. Ex. 2, 12-06-19 Responses to Defendants' Interrogatories, at 2-3; Ex. 11, 12-20-19 First Supp. Responses to Alvogen's Interrogatories, at 11-30; Ex. 5, 2020-02-17 Email D. Hanna to Counsel. Plaintiffs' late disclosures again prejudice Defendants by depriving them of the opportunity to meaningfully investigate Plaintiffs' arguments prior to service of expert reports.

       **F.**      **The Court Should Strike Plaintiffs' Untimely Expert Opinions:** The Court should strike Plaintiffs' untimely and prejudicial expert opinions under Fed. R. Civ. P. 37(c)(1) and/or Rule 16(f) for failure to disclose the facts and theories therein during discovery, as required by the Court's Scheduling Order and Defendants' interrogatories. *See, e.g.*, *TQ Delta, LLC v. ADTRAN, Inc.*, 2019 WL 4346530, at *2 (D. Del. Sept. 12, 2019) (striking opinions in opening expert reports that were not disclosed in party's final contentions); *Galderma Labs.*, 2018 WL 508876, at *2 (declining to reconsider order striking untimely infringement contentions that prejudiced opposing party, and which could not be cured without disrupting the trial); *Intellectual Ventures I LLC v. AT&T Mobility LLC*, 2017 WL 658469, at *6 (D. Del. Feb. 14, 2017) (striking portions of expert report that "violate[d] the Court's scheduling order, as they injected a new infringement theory into the case . . . two months after IV was required to disclose its final infringement contentions (and two months after the close of fact discovery)."); *INVISTA*

4

*N. Am. S.a.r.l. v. M & G USA Corp.*, C.A. No. 11-1007, 2013 WL 3216109, at *2 (D. Del. June 25, 2013) (striking untimely declaration that "contains previously undisclosed theories of invalidity" and noting that Rule 16(f) permits court to exclude evidence as a sanction for failure to comply with scheduling order requirement). The "*Pennypack*" factors[9] also support exclusion of Plaintiffs' late opinions.

*Pennypack* **Factor 1**: Plaintiffs' untimely disclosures surprised and continue to significantly prejudice Defendants. Plaintiffs gave *no indication* during fact discovery that they would advance the theories described in this motion. Despite the Court's scheduling order deadlines and Defendants' discovery requests, Plaintiffs elected to withhold these facts and theories until service of expert reports, which "deprived [defendant] of 'the opportunity to investigate [these] claim[s] . . . prior to the service of [plaintiff's] expert report" (*TQ Delta,* 2019 WL 4346530, at *2) and forced Defendants to "scramble to have an expert respond in an effort to preserve an expert opinion . . . ." (*Galderma Labs.,* 2018 WL 508876, at *2).

*Pennypack* **Factors 2 and 3**: There is no "cure" to the prejudice caused by Plaintiffs' untimely disclosures that would avoid disrupting an orderly trial. Expert discovery closes on August 13, and trial is scheduled on October 13. There is no room for further fact discovery (a point Plaintiffs themselves made in their motion to strike (D.I. 213, 419, at 3)), for Defendants to take the discovery they could not have known would be needed until Plaintiffs' untimely disclosures. If the Court does not strike Plaintiffs' untimely opinions, Defendants will have to begin investigating Plaintiffs' voluminous and complicated theories (due to, for example, the difficulty of determining which alleged inventor contributed which limitation of a claim), taking depositions of multiple inventors and authors of challenged publications only months before trial. And even that may not be enough—Defendants cannot yet know the full extent of the discovery needed to fully and fairly address Plaintiffs' untimely theories, particularly because Plaintiffs have repeatedly blocked access to such discovery. D.I. 222, 424 at 2-4.

*Pennypack* **Factors 4 and 5**: That Plaintiffs failed to disclose these theories in a timely manner indicates either a willful disregard of their discovery obligations, or that the theories simply were not important enough to advance. While Defendants cannot know Plaintiffs' state of mind with certainty, it can be reasonably inferred that Plaintiffs deliberately withheld their untimely facts and theories until service of expert reports. Plaintiffs were required to disclose their now-untimely theories in response to Scheduling Order deadlines as well as Defendants' interrogatories. When Plaintiffs provided inadequate responses, Defendants repeatedly requested that Plaintiffs comply with their discovery obligations. *See, e.g.*, Ex. 7, 01-15-20 Ltr from D. Hanna to E. Andersen *et al.*, at 6. They failed to do so. Plaintiffs' new theories cannot be characterized as newly-discovered evidence, either. The facts and information Plaintiffs sprung on Defendants during expert discovery were in Plaintiffs' possession all along. They represented Dr. Buggy throughout this case, and were alone in control of choosing which validity and claim interpretation theories to advance.

---

[9] The factors are (1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted; (2) the ability of the party to cure the prejudice; (3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases of the court; (4) bad faith or willfulness in failing to comply with a court order or discovery obligation; and (5) the importance of the information withheld. *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904 (3d Cir. 1977); *TQ Delta*, 2019 WL 4346530, at *1.

|  |  |
|---|---|
|  | YOUNG CONAWAY STARGATT & TAYLOR, LLP |
|  | */s/ James L. Higgins* |
|  | _____ |
|  | Melanie K. Sharp (No. 2501) |
|  | James L. Higgins (No. 5021) |
| PROSKAUER ROSE LLP | Steven W. Lee (No. 6676) |
| Siegmund Y. Gutman | 1000 North King Street |
| David M. Hanna | Wilmington, DE 19801 |
| Michelle M. Ovanesian* | (302) 571-6600 |
| Christopher D. Lynch | msharp@ycst.com |
| 2029 Century Park East, Suite 2400 | jhiggins@ycst.com |
| Los Angeles, CA 90067-3010 | slee@yst.com |
| (310) 557-2900 |  |
|  | *Attorneys for Alvogen Pine Brook LLC and Natco Pharma Ltd.* |
| Kimberly Q. Li |  |
| One International Place |  |
| Boston, MA 02110-2600 |  |
| (617) 526-9600 |  |
|  |  |
| *Admitted to Practice in Delaware and Washington D. C. Only |  |
|  |  |
|  | POTTER ANDERSON &CORROON LLP |
|  | */s/ David E. Moore* |
|  | _____ |
|  | David E. Moore (#3983) |
|  | Bindu A. Palapura (#5370) |
|  | Stephanie E. O'Byrne (#4446) |
| OF COUNSEL: | Hercules Plaza, 6th Floor |
|  | 1313 N. Market Street |
| Jay R. Deshmukh | Wilmington, DE 19801 |
| Shelley Ivan | (302) 984-6000 |
| Hershy Stern | dmoore@potteranderson.com |
| Jayita Guhaniyogi, Ph.D. | bpalapura@potteranderson.com |
| M. Diana Danca | sobyrne@potteranderson.com |
| Trevor J. Welch |  |
| KASOWITZ BENSON TORRES LLP | *Attorneys for Defendants Zydus Worldwide DMCC and Cadila Healthcare Limited* |
| 1633 Broadway |  |
| New York, NY 10019 |  |
| (212) 506-1700 |  |

6

## CERTIFICATE OF SERVICE

I, James L. Higgins, Esquire, hereby certify that on August 10, 2020, I caused to be electronically filed a true and correct copy of Defendants' Opening Letter in Support of Their Motion to Strike Plaintiffs' Untimely Opinions with the Clerk of the Court using CM/ECF, which will send notification to the following counsel of record:

Jack B. Blumenfeld
Jeremy A. Tigan
Jennifer A. Ward
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
jblumenfeld@mnat.com
jtigan@mnat.com
jward@mnat.com

I further certify that on August 10, 2020, I caused a copy of the foregoing document to be served on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

**BY E-MAIL**

Christopher N. Sipes
Erica N. Andersen
David A. Garr
Brianne Bharkhda
Chanson Chang
Nicholas L. Evoy
Justin Thomas Howell
Laura Dolbow
Covington & Burling LLP
One CityCenter
850 Tenth Street NW
Washington, DC  20001-4956
csipes@cov.com
eandersen@cov.com
dgarr@cov.com
bbharkhda@cov.com
cchang@cov.com
nevoy@cov.com
jhowell@cov.com
ldolbow@cov.com

Irena Royzman
Christine Willgoos
Cristina L. Martinez
Marcus A. Colucci
Kramer Levin Naftails & Frankel LLP
1177 Avenue of the Americas
New York, NY  10036
(212) 715-9100
iroyzman@kramerlevin.com
cwillgoos@kramerlevin.com
cmartinez@kramerlevin.com
mcolucci@kramerlevin.com

Hanna Lee
Daniel Williams
Kramer Levin Naftails & Frankel LLP
990 Marsh Road
Menlo Park, CA  94025
(650) 752-1700
hlee@kramerlevin.com

1

                                                                  ddwilliams@kramerlevin.com

Alexa Hansen  
David Denuyl                                         *Attorneys for Janssen Biotech, Inc.*  
Salesforce Tower  
415 Mission Street, Suite 5400  
San Francisco, CA  94105  
ahansen@cov.com  
ddenuyl@cov.com  

*Attorneys for Pharmacyclics LLC*

                                                  */s/ James L. Higgins*  
                                        James L. Higgins (No. 5021)

26886862.1

# Exhibits 1-14 Redacted in their Entirety