IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PHARMACYCLICS LLC and JANSSEN BIOTECH, INC. | ) ) ) | |
| Plaintiffs, | ) ) ) | C. A. No.: 18-192-CFC (CJB) (CONSOLIDATED) |
| v. | ) ) | ▮▮▮▮▮▮▮▮▮▮ |
| CIPLA LTD, et al., | ) ) | **REDACTED - PUBLIC VERSION** |
| Defendants. | ) | |
| PHARMACYCLICS LLC and JANSSEN BIOTECH, INC. | ) ) ) | |
| Plaintiffs, | ) ) ) | C. A. No.: 19-434-CFC (CJB) |
| v. | ) ) | ▮▮▮▮▮▮▮▮▮▮ |
| ALVOGEN PINE BROOK LLC and NATCO PHARMA LTD., | ) ) ) ) | **REDACTED - PUBLIC VERSION** |
| Defendants. | ) | |

**DEFENDANTS' RESPONSIVE LETTER BRIEF
IN OPPOSITION TO PLAINTIFFS' SECOND MOTION TO STRIKE**

Dear Magistrate Judge Burke:

Alvogen Pine Brook LLC, Natco Pharma Ltd. (together, "Alvogen"), Zydus Worldwide DMCC and Cadila Healthcare Ltd. (together, "Zydus"); and, Sandoz Inc. and Lek Pharms. d.d. (together, "Sandoz"), (collectively, "Defendants") oppose Plaintiffs' second motion to strike. In a thinly veiled attempt to distract from their own discovery failures[1], Plaintiffs filed yet another motion to strike, raising issues that apparently were not worthy of addressing in their first motion. It is clear why—although ostensibly styled as a motion to strike under Rule 37, Plaintiffs challenge the *form and merits* of Defendants' theories, not legitimately *whether* they were timely-disclosed. As discussed below, Defendants properly notified Plaintiffs of the theories raised in their second motion during discovery and in Defendants' expert reports, and Plaintiffs' merit-based arguments cannot be resolved in a discovery dispute motion. The Court should deny Plaintiffs' second motion to strike in its entirety.

**A.    Dr. Swift's Opinions Were Timely Disclosed.** Plaintiffs' purported problem with Dr. Swift's opinions, for the most part, is *not* whether they were timely disclosed. Instead, Plaintiffs challenge the form and merits of Dr. Swift's theories—issues that are not appropriate for a Rule 37 discovery motion. *See LEO Pharma A/S v. Actavis Labs. UT, Inc.*, 2018 WL 3374094, at *2 (D. Del. June 18, 2018) (denying motion to strike that was "at its core, a *Daubert* motion best reserved for resolution by the trial judge" (citing *BASF Corp. v. Johnson Matthey Inc.*, C.A. No. 14-1204 (D.I. 167) (D. Del. May 1, 2018) ("Plaintiff wants to resolve the [letter motion to quash an expert report] through the more expeditious and less expensive discovery dispute procedure. Unfortunately, it really is not a discovery dispute")). The *Pennypack* factors cannot support exclusion of Dr. Swift's opinions. As discussed below, there is no prejudice to Plaintiffs because Alvogen timely disclosed the opinions at issue, or properly made them in response to Plaintiffs' expert, Dr. Myerson. Moreover, Plaintiffs indisputably have had the opportunity to investigate and respond to the challenged theories—there is nothing to "cure." Because Alvogen timely disclosed its arguments, Plaintiffs have no legitimate basis to allege that Alvogen failed to comply with its discovery obligations. The Court should deny Plaintiffs' improper form-over-substance effort to exclude any of Dr. Swift's opinions.

**The Challenged Anticipation Arguments**: Alvogen timely notified Plaintiffs of its anticipation theories, in its contentions and in Dr. Swift's opening expert report—which Plaintiffs concede "was the time for Alvogen to disclose such theories and evidence." D.I. 230, 436, at 1. Nonetheless, Plaintiffs improperly move to strike three categories of anticipation arguments: (1) that Advani 2010 and Fowler 2010 inherently anticipate the asserted '753, '455, '548, and '140 Patents (the "Crystalline Form Patents"); (2) that Pollyea 2009, Advani 2010, Fowler 2010, and/or the Honigberg Patents anticipate the '455, '548, and '140 Patents; and (3) timely-disclosed anticipation arguments as to which Alvogen allegedly added support.

(1)    *Inherent Anticipation by Advani 2010 and Fowler 2010*: One of the many reasons that the Crystalline Form Patents are invalid is that Advani 2010, Fowler 2010, and Pollyea 2009

---

[1] For example, Plaintiffs' footnote 2 bizarrely lists a litany of allegedly late opinions which Plaintiffs **do not** seek to strike. Given that the issues in Plaintiffs' second motion already border on frivolous, Defendants will not catalog the reasons why Plaintiffs' list is meritless, other than to note that it is another example of Plaintiffs apparently trying to shift the focus away from their voluminous untimely expert opinions addressed in Defendants' motion to strike. *See* D.I. 232.

inherently anticipate the crystalline Form A claimed therein. The reason is substantively similar for all references—they, for example, demonstrate that "PCI-32765 used in these studies inherently was Form A of the claimed compound." Ex. 1, Alvogen Final Non-Honigberg Invalidity Cont., at 151 (addressing '753 Patent); *see also id.* at 220-222 ('455 patent), 276-277 ('548 patent), 291-293 ('140 patent). Dr. Swift's opening expert report likewise opined, for example, that the "crystalline form of PCI-32765" inherently discloses the crystalline Form A claimed in the Crystalline Form Patents. Ex. 2, Swift Op. Rpt., at ¶ 293; *see also id.* at ¶¶ 396-398, ¶¶ 483-484, ¶¶ 568-570. Because the analysis is substantially the same for all three references, Dr. Swift's opening report described it fully with respect to one reference (Pollyea 2009), and incorporated it by reference for the remaining two (Advani 2010 and Fowler 2010). There is nothing improper about this form of disclosure—indeed, Plaintiffs' rebuttal expert Dr. Myerson clearly understood Dr. Swift's anticipation arguments, disputing only that the references disclose crystalline Form A. *See* Ex. 3, Myerson Reb. Rpt., at ¶¶ 102 (contending "Pollyea 2009 also does not identify the physical form of PCI-32765 . . ."); 107 (contending "Advani 2010 does not identify" same); 111 (contending "Fowler 2010 does not identify" same). A cursory review of the challenged paragraphs in Dr. Swift's reply report makes clear that her reply opinions are directly responsive to Dr. Myerson's rebuttal—a proper "true rebuttal" that does not disclose new theories.[2] *See Novartis Pharms. Corp. v. Actavis, Inc.*, 2013 WL 7045056, at *9, *12 n. 13 (D. Del. Dec. 13, 2013) (refusing to strike arguments that "further elaborate[d] upon opinions offered in [the] opening report" and were "specifically tailored to address assertions made . . . about those [opening report] theories or bases of opinion" made on rebuttal).

(2) *Anticipation of the '455, '548, and '140 Patents:* As discussed above, Pollyea 2009, Advani 2010, and Fowler 2010 anticipate all of the Crystalline Form Patents because these references inherently disclose crystalline Form A. The Honigberg Patents also inherently disclose this element of each of the Crystalline Form Patents because, for example, they "disclose[] crystalline forms of ibrutinib, which would necessarily include Form A, and the claimed physical properties thereof." Ex. 1, Alvogen's Final Non-Honigberg Invalidity Cont., at 153; *see also id.* at 223-224, 279-280, 294-296. Dr. Swift admittedly included these anticipation theories in her opening expert report.[3] Yet Plaintiffs complain, again, that Dr. Swift did not copy

---

[2] Dr. Swift's reply report, for example, properly responded to Dr. Myerson's specific rebuttal points, including his contention "that Pollyea 2009, Advani 2010, and Fowler 2010 do not identify the physical form of PCI-32765, state whether PCI-32765 is crystalline, or provide any analytical characteristics of PCI-32765." *See, e.g.*, Ex. 4, Swift Rep. Rpt., at ¶ 47; *see also id.* at ¶¶ 47-63 (rebutting Dr. Myerson's opinion that the three references do not disclose crystalline Form A), 71 (describing why "the crystalline Form A of ibrutinib . . . used for the Phase I dose escalation study described in Pollyea 2009, Advani 2010, and Fowler 2010 has the same properties as those recited in the Asserted Claims of the Crystalline Form Patents"), 90 (summarizing inherent anticipation rebuttal), 114-150 (replying to Dr. Myerson's rebuttal opinions regarding Advani 2010 and Fowler 2010).

[3] Because Pollyea 2009, Advani 2010, Fowler 2010, and the Honigberg Patents anticipate each of the Crystalline Form Patents for essentially the same reasons (at least those relevant here), Dr. Swift detailed those reasons once in her opening report with respect to the '753 Patent, and incorporated that discussion by reference for the remaining Crystalline Form Patents. *See, e.g.*, Ex. 2, Swift Op. Rpt., at ¶¶ 291-300, 396, 483, 568. Dr. Swift *also* addressed any issues specific to the claims of each Crystalline Form Patent. *See, e.g.*, *id.* at ¶¶ 397-398 (addressing "melting temperature" of claim 10, and "non-hygroscopic" element of claim 12, of the '455 patent).

and paste them separately for each of the Crystalline Form Patents—an unnecessary exercise in light of Alvogen's clear disclosure of its theory during discovery and in Dr. Swift's opening report. Notably, Plaintiffs' rebuttal validity expert Dr. Myerson cross-referenced arguments for the Crystalline Form Patents in the same manner. *See, e.g.,* Ex. 3, Myerson Reb. Rpt., at ¶ 134 ("[F]or all of the reasons explained above in Section IX.A.2 [regarding the '753 Patent], Pollyea 2009 does not anticipate claims 1-8, 10, and 12 of the '455 patent"). Plaintiffs' letter also conspicuously fails to identify any allegedly "new" theories in Dr. Swift's reply report, which properly responded to Dr. Myerson's specific critiques. *See, e.g.*, Ex. 4, Swift Rep. Rpt., at ¶ 47 (citing and responding to Myerson Reb. Rpt., at ¶¶ 102-103, 107-108, 111-112). Again, there is no basis to strike Dr. Swift's reply to Dr. Myerson's rebuttal arguments. *See Novartis*, 2013 WL 7045056, at *9, *12 n. 13 (refusing to strike reply arguments "tailored to address assertions made" on rebuttal, even though they elaborated upon prior opinions).

   (3) *Documents Cited in Dr. Swift's Reply Report*: The Court should also reject Plaintiffs' improper attempt to strike a handful of documents that Dr. Swift cited in response to Dr. Myerson's rebuttal opinions. Plaintiffs specifically identify only two documents—a European patent application, EP2854859, and its prosecution history. D.I. 230, 436, at 2. Belying Plaintiffs' argument that these documents were "highly prejudicial," *(id.* at 2) is the fact that the Defendants in the Capsule Action also cited them for the first time in their reply report, and Plaintiffs did not move to strike. *See, e.g.*, Ex. 5, Stephenson Rep. Rpt., at ¶¶ 40, 67, 105. Nonetheless, Dr. Swift noted that these materials are "[c]onsistent with [her] opinion that the Honigberg Patents inherently disclose crystalline Form A," and cited them in direct response to "Dr. Myerson's argument that the synthesis process disclosed in Example 1b only resulted in amorphous Ibrutinib." Ex. 4, Swift Rep. Rpt., at ¶ 154. The same is true regarding the documents Plaintiffs characterize as "Plaintiffs' non-public documents in alleged support of her inherent anticipation theory." D.I. 230, 436, at 2. While Plaintiffs failed to specifically identify these documents, the cited paragraphs in Plaintiffs' letter brief confirm that they likewise rebut arguments in Dr. Myerson's rebuttal report—arguments that Plaintiffs never previously disclosed in response to Defendants' interrogatories.[4] *See, e.g.*, Ex. 6A, 11-12-19 Plfs' Responses to Alvogen Interrogatories, at 16-18 (incorporating response to Joint Interrogatory No. 1 (Ex. 6B), which did not address anticipation argument). Providing further support for timely-disclosed arguments is proper. *See INVISTA N. Am. S.A.R.L.. v. M & G USA Corp.*, 2013 WL 3216109, at *2 (D. Del. June 25, 2013) (denying in part motion to strike, finding "supporting citations" in a reply report were proper where they pertained to "subject matter that was originally disclosed in [the expert's] opening report and presented no new or changed opinions.").

  **The Challenged Obviousness-Type Double Patenting ("OTDP") Arguments**: During discovery and in Dr. Swift's opening expert report, Alvogen contended that the '753 Patent is also invalid due to OTDP over the claims of several asserted patents, including the '455 Patent.

---

[4] *See, e.g.*, Ex. 4, Swift Rep. Rpt., at ¶ 47 (Rebutting Dr. Myerson's claim that references "do not identify the physical form of PCI-32765"); 65 (Responding "to Dr. Myerson's criticism that my Opening Report 'not does cite to anything in [Pharmacyclics'] documents that links a specific batch record to the Phase I study'"); 71-89 (addressing same critique by Dr. Myerson); 93 (same); 109-111 (disagreeing (yet addressing) "Dr. Myerson['s] conten[tion] that I have not addressed the specific claims of the '140 Patent in my analysis."); 127-129 (same); 148 (same).

*See, e.g.*, Ex. 2, Swift Op. Rpt., at ¶¶ 282-290.[5] Plaintiffs are wrong that "instead of comparing the claims of the '753 Patent to the claims of the '455 Patent, Dr. Swift cross-referenced her argument" regarding the '444 Patent. D.I. 230, 436, at 2. Dr. Swift indeed compared the claims of the '753 Patent with that of the '455 patent, showing how the '455 Patent also "recites the chemical formula for ibrutinib and certain physical properties associated with Form A and recited in the '753 Patent claims." Ex. 2, Swift Op. Rpt., at ¶ 284.[6] The three paragraphs Plaintiffs move to strike disclose no new theories—they address Dr. Myerson's rebuttal opinion regarding the alleged scope of the '753 Patent claims. Ex. 4, Swift Rep. Rpt., at ¶¶ 259-261.

**The Challenged Indefiniteness Argument**: Finally, Plaintiffs seek to exclude two narrow opinions in Dr. Swift's rebuttal report that the terms "non-hygroscopic" and "unsolvated" are indefinite, incorrectly arguing that Alvogen withheld its theory until rebuttal expert reports instead of disclosing it during claim construction. First, this Court did not address pure indefiniteness challenges during claim construction. Second, Alvogen indeed disclosed the basis for its indefiniteness theory before rebuttal expert reports. Dr. Swift's opening expert report, for example, described the lack of clarity regarding the terms in question. *See* Ex. 2, Swift Op. Rpt., at ¶¶ 156-162 (describing, for example, why the ambiguity with respect to the term "unsolvated" does not further limit the claim from which it depends), 330 ("A POSA would understand that whether the crystalline form is non-hygroscopic does not distinguish between the crystalline forms A-F of the ibrutinib compound."). Third, Dr. Myerson's opening expert report provided new context regarding how Plaintiffs intended to apply the "non-hygroscopic" and "unsolvated" limitations to their infringement and secondary considerations arguments.[7] Dr. Swift's rebuttal properly responded to Plaintiffs newly-disclosed interpretations. *Pharmastem Therapeutics, Inc.*

---

[5] Alvogen likewise contended during discovery that the "claims of the '753 Patent are invalid for obviousness double patenting" because they claim the same form of the compound "as claim 1 of the '455 Patent," and any remaining limitations of the '753 Patent claims are "intrinsic properties" that "do not add to the patentability of the claims." Ex. 1, Alvogen Final Non-Honigberg Invalidity Cont., at 148.

[6] Dr. Swift's reference to the '444 Patent clearly related to her prior opinion that a person of ordinary skill would have understood that "the remaining claim limitations of claim 1 of the '753 Patent are merely physical properties (e.g., **XRPD peaks, . . .) that were inherent properties of crystalline Form A of ibrutinib**." *Compare* Ex. 2, Swift Op. Rpt., at ¶ 228; with *id.* at ¶ 285 ("For the reasons discussed for the '444 Patent, claim 1 of the '753 Patent is invalid for obviousness-type double patenting over claim 1 of the '455 Patent. This is emphasized by the fact that both claims recite a crystalline Form A of ibrutinib, and also recite specific **XRPD pattern 2-Theta peaks, which are purportedly inherent to Form A**.") (emphasis added).

[7] For example, as to the term "non-hygroscopic," Dr. Myerson's opening report elaborated on Plaintiffs' contentions. *Compare*, Ex. 7, Plfs' Final Infgmt. Cont., Ex. M, at M-8 (citing string of documents following term "[n]on-hygroscopicity:") *with* Ex. 8, Myerson Op. Rpt., at ¶ 491 (describing contention that "crystalline Form A of ibrutinib used in Alvogen's ANDA Product, which Alvogen has described as 'consistently produc[ing] Form-A as PXRD pattern given in US 2013/0338172 A1,' is non-hygroscopic"). The same is true regarding the term "unsolvated." *Compare*, Ex. 7, Plfs' Final Infgmt. Cont., Ex. M, at M-26 (contending that "Alvogen's API and ANDA Products contain the crystalline form of claim 1, wherein the crystalline form is unsolvated" and citing documents); *with* Ex. 8, Myerson Op. Rpt., at ¶ 489 (describing contention regarding how "[t]he specifications for loss on drying and residual solvents also show that Alvogen's ibrutinib drug substance is unsolvated").

*v. Viacell, Inc.*, 2003 WL 124149, at *1 n.1 (D. Del. Jan. 13, 2003) ("[w]hile the court recognizes that a determination of indefiniteness is necessarily intertwined to some degree with claim construction, it is clear that the court must first attempt to determine what a claim means before it can determine whether the claim is invalid for indefiniteness."). Plaintiffs also failed to show any prejudice from Dr. Swift's indefiniteness arguments—a legal issue which Plaintiffs addressed in their reply report. *See, e.g.*, Ex. 9, Myerson Rep. Rpt., at ¶ 149.

**B.     The Court Should Not Strike Any Portions of Dr. Stephenson's Reply Report.** The portions of Dr. Stephenson's Reply Report Plaintiffs identify as "new" are directly responsive to arguments raised by Plaintiffs. *See Helios Software, LLC v. Spectorsoft Corp.*, 2014 WL 4796111, at *3 (D. Del. Sept. 18, 2014) ("Reply reports 'may cite new evidence and data so long as the new evidence and data is offered to directly contradict or rebut the opposing party's expert.'") (quotation omitted). Additionally, Dr. Stephenson's opinion that ibrutinib was in clinical trials before June 4, 2012 (*see* Ex. 5, Stephenson Rep. Rpt., at ¶¶ 42-47) was first offered in Dr. Stephenson's opening report. *See* Ex. 10, Stephenson Op. Rpt., at ¶¶ 135-136 (noting that "various prior art references indicated that Pharmacyclics was investigating ibrutinib through clinical trials" which would have "motivated a [POSA] to identify the most thermodynamically stable form of ibrutinib."). Dr. Myerson challenged this motivation in his Responsive Report. *See* Ex. 3, Myerson Reb. Rpt., at ¶ 399 (disagreeing with Dr. Stephenson that the '444 patent would motivate a POSA "to 'invariably [] perform routine screening and characterization and identif[y] the crystalline form best [suited] for clinical and commercial development' . . . [because] Dr. Stephenson provides no support for this conclusion other than impermissible hindsight."). In response, Dr. Stephenson set forth these references, confirming the non-controversial fact that ibrutinib was in clinical trials as of June 4, 2012. *See* Ex. 5, Stephenson Rep. Rpt., at ¶¶ 42-45; *Helios*, 2014 WL 4796111, at *3 ("[C]ourts need not 'automatically exclude anything an expert could have included in his or her original report. Such a rule would lead to the inclusion of vast amounts of arguably irrelevant material in an expert's report on the off chance that failing to include any information in anticipation of a particular criticism would forever bar the expert from later introducing the relevant material. All that is required is for the information to repel other expert testimony . . .") (quotation omitted).

Furthermore, the *Pennypack* factors weigh against striking Dr. Stephenson's opinions at least because they pose no risk of prejudice. None of Fowler 2010, Honigberg 2010, Buggy, and Honigberg '742 are "new" references sprung on Plaintiffs in reply. All four references were disclosed in Defendants' Final Invalidity Contentions in connection with related patents-in-suit. *See* Ex. 11, Defendants' Final Invalidity Cont., at 59-61, 243-244, 250-251. *See HSM Portfolio LLC v. Elpida Memory Inc.*, 2016 WL 552543, at *1 (D. Del. Feb. 11, 2016) ("Since these patents cover similar technology, it is unclear to me how prejudice arises from using, as a background reference, a prior art reference which had already been disclosed as prior art for another patent-in-suit."). Moreover, Plaintiffs had an opportunity to depose Dr. Stephenson and cure any alleged prejudice and, in fact, asked him questions about ibrutinib clinical trials prior to 2012. *See* Ex. 12, Stephenson Dep. Tr., at 174:13-190:13. Because Dr. Stephenson's opinions constitute proper expert rebuttal testimony and do not raise any prejudice, the Court should not strike his opinions.

|  |  |
|---|---|
| | YOUNG CONAWAY STARGATT & TAYLOR, LLP |
| | */s/ James L. Higgins* |
| OF COUNSEL | Melanie K. Sharp (No. 2501) |
| | James L. Higgins (No. 5021) |
| PROSKAUER ROSE LLP | Steven W. Lee (No. 6676) |
| Siegmund Y. Gutman | 1000 North King Street |
| David M. Hanna | Wilmington, DE 19801 |
| Michelle M. Ovanesian* | (302) 571-6600 |
| Christopher D. Lynch | msharp@ycst.com |
| 2029 Century Park East, Suite 2400 | jhiggins@ycst.com |
| Los Angeles, CA 90067-3010 | slee@ycst.com |
| (310) 557-2900 | |
| | *Attorneys for Alvogen Pine Brook LLC and Natco Pharma Ltd.* |
| Kimberly Q. Li | |
| One International Place | |
| Boston, MA 02110-2600 | |
| (617) 526-9600 | |
| | |
| *Admitted to Practice in Delaware and Washington D. C. Only | |
| | POTTER ANDERSON & CORROON LLP |
| | */s/ David E. Moore* |
| | David E. Moore (#3983) |
| OF COUNSEL: | Bindu A. Palapura (#5370) |
| | Stephanie E. O'Byrne (#4446) |
| KASOWITZ BENSON TORRES LLP | Hercules Plaza, 6th Floor |
| Jay R. Deshmukh | 1313 N. Market Street |
| Shelley Ivan | Wilmington, DE 19801 |
| Hershy Stern | (302) 984-6000 |
| Jayita Guhaniyogi, Ph.D. | dmoore@potteranderson.com |
| M. Diana Danca | bpalapura@potteranderson.com |
| Trevor J. Welch | sobyrne@potteranderson.com |
| 1633 Broadway | |
| New York, NY 10019 | *Attorneys for Defendants Zydus Worldwide DMCC and Cadila Healthcare Limited* |
| (212) 506-1700 | |

6

|  |  |
|---|---|
| | HEYMAN ENERIO GATTUSO & HIRZEL LLP |
| | */s/ Dominick T. Gattuso* |
| OF COUNSEL: | Dominick T. Gattuso (#3630)<br>300 Delaware Avenue, Suite 200 |
| ALSTON & BIRD LP | Wilmington, DE 19801 |
| Natalie C. Clayton | (302) 472-7300 |
| Jacob Bass | dgattuso@hegh.law |
| 90 Park Avenue, 15th Floor | |
| New York, NY 10016-1387 | *Attorneys for Sandoz Inc. and Lek* |
| (212) 210-9400 | *Pharmaceuticals d.d.* |
| | |
| Shri M. Abhyankar | |
| One Atlantic Center | |
| 1201 West Peachtree Street, Suite 4900 | |
| Atlanta, GA 30309-3424 | |
| (404) 881-7000 | |

Dated: August 17, 2020

# Exhibits 1-12 Redacted in their Entirety