IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PHARMACYCLICS LLC and<br>JANSSEN BIOTECH, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>CIPLA LIMITED, et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 18-192 (CFC) (CJB)<br>(Consolidated)<br><br><br><br>**REDACTED -<br>PUBLIC FILING** |
| PHARMACYCLICS LLC and<br>JANSSEN BIOTECH, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>ALVOGEN PINE BROOK LLC and<br>NATCO PHARMA LTD.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 19-434 (CFC) (CJB)<br><br><br>**REDACTED -<br>PUBLIC FILING** |

**PLAINTIFFS' RESPONSIVE LETTER BRIEF IN OPPOSITION TO DEFENDANTS'
MOTION TO STRIKE PLAINTIFFS' EXPERT OPINIONS**

**Original Filing Date: August 17, 2020**
**Redacted Filing Date: August 24, 2020**

Dear Judge Burke:

Defendants Alvogen and Zydus (collectively "Defendants") seek to exclude hundreds of pages of Plaintiffs' experts' validity opinions as purportedly "untimely," even though they were served in compliance with the Scheduling Order. Defendants' complaint, in essence, is that the substance of Plaintiffs' expert reports on validity was not adequately set forth during fact discovery in response to Defendants' *interrogatories*. Defendants' motion lacks merit. It fails for at least five independent reasons and should be denied.

*First*, Plaintiffs' detailed interrogatory responses were more than sufficient to put Defendants on notice of the positions Plaintiffs would advance in expert discovery, as well as the supporting facts. *See* Ex. A, Pls.' Fifth Suppl. Resp. to Defs.' 1st Set of Joint Interrogs. (Feb. 10, 2020); Ex. B, Pls.' 1st Suppl. Resp. to Alvogen's 1st Set of Interrogs. (Dec. 20, 2019). Plaintiffs were not required in their *interrogatories* to recite chapter-and-verse the content of their *expert reports*—especially rebuttal reports—as a party may provide narrative responses to interrogatories and "later develop its responses in the context of its expert reports." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l*, C.A. No. 04-1371-JJF, 2005 WL 8136574, at *2 (D. Del. Oct. 11, 2005). That Plaintiffs' expert reports offer additional detail beyond, and elaborate on, their interrogatory responses is not improper—if it were, expert reports would be superfluous.

*Second*, the vast majority of the opinions Defendants challenge respond to invalidity arguments that Defendants did not disclose until after the close of fact discovery, either in their January 30, 2020 final invalidity contentions—served just a month before opening expert reports were originally due—or in their opening expert reports.[1] Plaintiffs could not have provided rebuttal contentions before Defendants disclosed their invalidity contentions. *See Lambda Optical Sols., LLC v. Alcatel-Lucent USA Inc.*, C.A. No. 10-487-RGA-CJB, 2013 WL 1776104, at *9 (D. Del. Apr. 17, 2013) (plaintiff not entitled to interrogatory response regarding non-infringement contentions until after serving infringement contentions). Plaintiffs properly responded to these new theories in their expert reports.

*Third*, the opinions in Plaintiffs' rebuttal reports that Defendants seek to strike are proper rebuttal of Defendants' experts' invalidity opinions and are therefore neither untimely nor prejudicial. A "rebuttal is proper if the intent is to rebut evidence on the same subject matter identified by the opposing party's expert report," and it "'may cite new evidence and data so long as the new evidence and data is offered to directly contradict or rebut the opposing party's expert.'" *Astellas Pharma Inc. v. Actavis Elizabeth LLC*, C.A. No. 16-905-JFB-CJB, 2019 WL 2265570, at *2 (D. Del. May 13, 2019) (quoting *Withrow v. Spears*, 967 F. Supp. 2d 982, 1001–02 (D. Del. 2013)).

*Fourth*, even if Plaintiffs' disclosures were deficient (and they were not), Defendants fail to offer any concrete example of prejudice caused by the alleged deficiency. Rather, they merely

---

[1] Opening reports were originally due on February 28, 2020; however, on February 28, the parties stipulated to extend the deadline for service of opening reports. *See* D.I. 355, C.A. 18-192; D.I. 175, C.A. 19-434.
(continued…)

reiterate their allegation of untimely disclosure and assert that they were "forced" to "scramble to have an expert respond in an effort to preserve an expert opinion." Defs.' Ltr. Br. at 5 (D.I. 438)[2] (quoting *Galderma Labs., L.P. v. Amneal Pharms., LLC*, C.A. No. 16-207-LPS, 2018 WL 508876, at *2 (D. Del. Jan. 22, 2018)). But this is not evidence of prejudice, and in fact, Defendants were not prejudiced. Defendants had the opportunity to carefully review Plaintiffs' expert reports, have their own experts prepare reports responding thereto, and depose Plaintiffs' experts.

*Fifth*, to the extent Defendants believed that Plaintiffs' interrogatory responses were inadequate, the proper recourse was a motion to compel, not a belated motion to strike. As this Court noted in a similar context, "to the extent that Defendants were unsatisfied with Plaintiffs' responses [to interrogatories regarding validity contentions], they could have filed a motion to compel a more complete or narrow response." Ex. EE, *Astellas Pharma*, C.A. No. 16-905-JFB-CJB, D.I. 438 at 5 (D. Del. May 15, 2019); *see also* Ex. FF, *Integra LifeSciences Corp. v. HyperBranch Med. Tech., Inc.*, C.A. No. 15-819-LPS-CJB, D.I. 458 (oral order) (D. Del. Dec. 14, 2017) ("If Defendant was not satisfied with Plaintiffs' answer [to interrogatory regarding validity positions], Defendant could have taken up the issue during the discovery period."). Defendants contend they began alleging certain purported deficiencies in December 2019 (just before the close of fact discovery), *see, e.g.*, Defs.' Ltr. Br. at 3, but offer no explanation for their failure to raise any of these alleged deficiencies with the Court in the eight months that have passed.

In short, Defendants are not entitled to the "extreme sanction" they seek, as they have failed to show even a "slight deviation from pre-trial notice requirements" or "slight prejudice" flowing therefrom—let alone the sort of clear and substantial discovery violation that might support a motion to strike. Ex. GG, *Wyeth Holdings Corp. et al. v. Sandoz, Inc.*, C.A. No. 09-955-RGA-CJB, D.I. 115-1 at 5 (D. Del. Mar. 14, 2012) (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 791–92 (3d Cir. 1994)). Although the foregoing reasons are sufficient to show that Defendants' motion fails, as discussed more fully below, Defendants' arguments are also replete with mischaracterizations of Plaintiffs' expert reports, interrogatory responses, and the course of discovery in this case.

Defendants' letter does not indicate with specificity what it seeks to strike, or demonstrate that Plaintiffs' opinions were not disclosed. Plaintiffs address representative examples of Defendants' arguments, which are so broad and non-specific as to make a comprehensive and particularized rebuttal impossible. However, if Defendants provide more specific detail or argument, Plaintiffs should be afforded an opportunity to respond.

**A.    Dr. Rule's rebuttal report and Dr. Buggy's declaration do not introduce new or untimely opinions.**[3] Defendants assert that Dr. Rule's opinion that three of Defendants' invalidity references (Advani 2010, Roth 2010, and December 2009 Press Release) are not prior

---

[2] Unless otherwise noted, D.I. numbers are to the docket in C.A. No. 18-192.
[3] Defendants incorrectly characterize this dispute as one of "antedating" and cite case law regarding the burden of proving an earlier conception date. The issue is whether the references are the inventor's own work, and thus not prior art. Should the Court accept Defendants' "antedating" characterization, it should nonetheless deny the motion to strike. *See, e.g.*, *EMC Corp. v. Pure Storage Inc.*, 154 F. Supp. 3d 81, 100–03 (D. Del. 2016) (permitting co-inventor and expert declarations supporting prior conception and reduction to practice).

2

art is untimely. However, Plaintiffs' interrogatory responses disputed that Defendants' asserted references were prior art and that Defendants had established them as such. *See, e.g.*, Ex. B, Pls.' 1st Suppl. Resp. to Alvogen's 1st Set of Interrogs. No. 8 (Dec. 20, 2019), at 11–13; Ex. A, Pls.' 5th Suppl. Resp. to Defs.' 1st Set of Joint Interrogs. No. 1 (Feb. 10, 2020), at 2–5 (Oct. 22, 2018 response and Mar. 15, 2019 first supplemental response). In their responses, Plaintiffs also provided information regarding the proper June 2010 priority date of the '090 Patent. Ex. A, Pls.' 5th Suppl. Resp. to Defs.' 1st Set of Joint Interrogs. No. 3 at 76. Plaintiffs also listed Dr. Buggy on their Paragraph 3 disclosures as having information regarding the '090 Patent, and produced numerous documents concerning the research and development leading to the '090 Patent and the three references at issue, including documents from third-party inventors David Loury and Gwen Fyfe. The facts underlying Dr. Buggy's declaration were available to Defendants, who have now taken Dr. Buggy's deposition twice and served two supplemental expert reports purportedly responding to his testimony.

Defendants bear the burden of proving that their asserted invalidity references are prior art. *See, e.g.*, *Sandt Tech., Ltd. v. Resco Metal & Plastics Corp.*, 264 F.3d 1344, 1350 (Fed. Cir. 2001); Pls.' Disc. Dispute Ltr. (July 30, 2020), D.I. 427 at 1.[4] Alvogen did not even identify Advani 2010 or Roth 2010 until after the close of fact discovery, and only then did so in the context of a 16-reference obviousness combination without any explanation as to why the references are prior art. *Compare* Ex. Y, Alvogen's Initial Invalidity Contentions (Aug. 28, 2019), at 81–83 *with* Ex. U, Alvogen's Final Non-Honigberg Patents Invalidity Contentions (Jan. 30, 2020), at 90–97. Zydus did not provide a single obviousness combination for the '090 Patent in its contentions, stating only "The Prior Art Renders Obvious Claim 2 of the '090 Patent." Ex. C, Defs.' Initial Invalidity Contentions (Nov. 5, 2018), at 144–48; Ex. D, Defs.' Final Invalidity Contentions (Jan. 30, 2020), at 79–84.[5] Despite the paucity of Defendants' disclosures, Plaintiffs provided robust responses to Defendants' invalidity theories. And although Defendants state that Zydus's initial contentions put Plaintiffs on notice regarding "Defendants' position as to why the references in the Buggy Declaration are invalidating prior art," Defs.' Ltr. Br. at 2, that section of their contentions addressed seven different patents in two different families with different priority dates, and provided no specific information at all as to the '090 Patent. *See* Ex. C, Defs.' Initial Invalidity Contentions (Nov. 5, 2018), at 46–59 (identifying "Method Patents"), 116–39 (summary of the "[p]rior art to the Method Patents"). In sum, Plaintiffs provided detailed information regarding the facts and their positions related to these references, despite Defendants' failure to articulate their obviousness theories until expert discovery.

In addition, there is no prejudice resulting from Plaintiffs' (timely) response to Defendants' (untimely) invalidity theories.[6] Defendants have now taken a second deposition of Dr. Buggy and

---

[4] The corroboration of Dr. Buggy's declaration required by *Sandt* is also evidenced by Plaintiffs' documents and deposition testimony.

[5] Indeed, Zydus's obviousness theory set forth in its opening report still lacked specificity and included an 11-reference combination. *See* Ex. CC, Oleksowicz Opening Rpt. ¶¶ 79–99, 115–33.

[6] Defendants' complaint that Dr. Buggy has untimely provided information he is able to provide *at trial* is unjustified. Plaintiffs should not be penalized for synthesizing and presenting such information well in advance of trial.
(continued…)

3

responded in *four* expert reports to Dr. Rule's rebuttal report and Dr. Buggy's declaration.[7] Defendants argue that "extensive discovery" is still needed, but they have already questioned Drs. Buggy and Loury at length, including on the three references at issue, as well as Dr. Advani's and Dr. Hamdy's respective roles in clinical trials. *See, e.g.*, Ex. E, Buggy Tr. (Nov. 1, 2019), at 77:2–24, 133:1–134:14. Defendants subpoenaed Dr. Fyfe during fact discovery, but cancelled the deposition at the last minute.[8] Defendants' failure to take depositions of other inventors or researchers—all of whom are third parties—during fact discovery is their fault alone. *See* Pls.' Disc. Dispute Ltr. (July 30, 2020), D.I. 427 at 2–4 (describing Defendants' ample opportunity to seek third-party discovery).

**B.     Plaintiffs timely disclosed their positions on objective indicia of non-obviousness.** Alvogen and Zydus point to hundreds of pages of expert reports with blanket assertions that the sections relating to objective indicia should be indiscriminately stricken, even going as far as urging the court to strike sections of expert reports discussing *legal standards*. *See, e.g.*, Ex. F, Rule Opening Rpt., ¶¶ 28–29, 37–43; Ex. G, Rule Rebuttal Rpt., ¶¶ 17, 20; Ex. H, Myerson Opening Rpt., ¶¶ 87–92; Ex. I, Drover Opening Rpt. ¶¶ 8–9, 30–33. Alvogen and Zydus even seek to strike sections discussing patents and claims *not asserted against either of them*. *See* Ex. J, Williams Capsule Opening Rpt.; Ex. K, Williams Capsule Reply Rpt.; Ex. L, Cooke Opening Rpt., ¶¶ 2, 4, 26–28, 40–45, 280–334; Ex. M, Cooke Reply Rpt., ¶¶ 4–5, 34–64. There is no basis to strike these or any other portions of Plaintiffs' expert reports.

It is unclear which specific "secondary considerations theories, facts, and arguments" Defendants contend were not properly disclosed. *See* Defs.' Ltr. Br. at 3. Given the lack of specificity, this argument should be deemed waived, as it is too general to fairly respond. In any event, Plaintiffs' interrogatory responses provided more than adequate disclosure. Plaintiffs provided detailed information regarding objective indicia of non-obviousness in their responses to Defendants' interrogatories. Ex. A, Pls.' 5th Suppl. Resp. to Defs.' 1st Set of Joint Interrogs. No. 1, at 49–72; Ex. B, Pls.' 1st Suppl. Resp. to Alvogen's 1st Set of Interrogs. No. 8, at 26–27. These responses explained that "Plaintiffs may rely upon objective indicia of non-obviousness, including evidence of skepticism, teaching away, failure of others, long-felt but unmet need, unexpected results, acclaim or praise, recognition in the industry, licensing, commercial success, and copying" to "support the non-obviousness of the Asserted Patents, all of which are embodied in Plaintiffs' drug product, Imbruvica® (ibrutinib) and methods of treatment using the same." Ex. A, Pls.' 5th Suppl. Resp. to Defs.' 1st Set of Joint Interrogs. No. 1, at 49. Further, Plaintiffs' interrogatory responses include, by way of example, the following disclosures:

---

[7] In addition to their reply reports, Alvogen and Zydus each served a supplemental report after Dr. Buggy's second deposition.

[8] On December 17, 2019, Dr. Loury was deposed in his personal capacity and as a 30(b)(6) witness regarding "the research and development leading to the claimed inventions of the '090 . . . Patent[]." Ex. N, 30(b)(6) Designation Ltr. (Nov. 6, 2019), at 3. Dr. Fyfe's deposition was scheduled for December 11, 2019, but Defendants chose not to go forward with it. Ex. O, Dec. 10, 2019 Emails. In fact, Plaintiffs' counsel had flown to California for that deposition when Defendants cancelled it.

- *Long-felt need*. Plaintiffs' interrogatory responses disclosed that there was a long-felt need for new and improved therapies for the claimed cancers of the method of treatment patents, including mantle cell lymphoma ("MCL"). Ex. A at 40. At the time of the invention, treatments for relapsed and refractory MCL "were associated with significant toxicities," and had "low medians for progression-free survival." *Id.* at 51.

- *Unexpected results*. Plaintiffs' interrogatory responses stated that Imbruvica proved to be a surprisingly "safe, effective, well-tolerated, and non-toxic treatment." *Id.* at 53. For MCL specifically, ibrutinib produced "unprecedented response rates," and responses that were also "durable, with a median duration of response of 17.5 months and median progression free survival of 13.9 months." *Id.* at 55.

- *Skepticism and teaching away*. Plaintiffs' interrogatory responses disclosed that clinicians and pharmaceutical companies were initially skeptical of ibrutinib because "it irreversibly inhibited BTK and because it contained a Michael acceptor." *Id.* at 49. Irreversible inhibitors were "generally avoided in drug development because of the high risk of toxicity and adverse reactions." *Id.* The interrogatory responses further explained the skepticism toward BTK as a target because of concerns that patients would experience symptoms similar to patients with XLA, a genetic BTK disorder, including "weakened immunity to bacterial and viral infections." *Id.* Moreover, for the tablet formulation, Plaintiffs explained that a skilled artisan would have been "skeptical that one could successfully develop a high drug load tablet formulation of ibrutinib" as ibrutinib is "nearly insoluble" and has a low bioavailability. Ex. B at 26–27.

- *Praise*. Plaintiffs' interrogatory responses disclosed that Pharmacyclics won multiple awards for the development of ibrutinib, including the American Chemical Society's Heroes of Chemistry Award. Ex. A at 64. As to the tablet formulation, Plaintiffs' interrogatory responses explained that Imbruvica tablet formulations "enabled patients to take the entire 420 mg or 560 mg dose in a single tablet," and that praise for the "reduction in 'pill burden' from high load tablet formulations" was evidence of non-obviousness. Ex. B at 27.

Moreover, contrary to Defendants' assertion, Plaintiffs explained that Imbruvica capsules and tablets are commercial embodiments of the asserted claims in their response to Defendants' interrogatories. Ex. A at 49, 67–72; Ex. B at 26.

Defendants quibble with the level of detail in Plaintiffs' interrogatory responses. However, if Defendants wanted more detail from the interrogatory responses, they could have moved to compel. *See* Ex. HH, *Integra Lifesciences Corp. v. Hyperbranch Med. Tech., Inc.*, C.A. No. 15-819-LPS-CJB, D.I. 448 at 10–12 (D. Del. Dec. 11, 2017). In any event, there was no prejudice to Defendants because Plaintiffs included these objective indicia opinions in the first round of expert reports, and Defendants' experts responded to these opinions in their rebuttal reports. If Defendants had been surprised by any of the objective indicia opinions in Plaintiffs' reports, they could have sought relief from the Court months ago. Instead, they waited to claim tardiness until after the parties invested enormous resources addressing these issues in multiple rounds of reports and more than twenty expert depositions.

**C.     Defendants misstate Dr. Williams's opinion regarding the '857 Patent claims.**
Defendants apparently seek to strike opinions from Dr. Williams's rebuttal report, asserting that Plaintiffs "disclosed a new interpretation of the '857 Patent claims," "contending for the first time that the '857 Patent claims require 'immediate release high-load solid tablet formulations.'" Defs.' Ltr. Br. at 3. But Dr. Williams's rebuttal opinions are neither new nor inconsistent with Plaintiffs' long-standing position. Dr. Williams did not opine that the '857 Patent claims "require" immediate release formulations. Rather, Dr. Williams's rebuttal report distinguished the teachings of the "Goldstein" reference, explaining that Goldstein's teachings are limited to delayed release formulations. He further explained that a POSA would not have combined this reference with other cited art because Goldstein does not teach (and indeed criticizes) immediate release. *See, e.g.*, Ex. P, Williams Tablet Rebuttal Rpt. ¶ 164 ("[A] POSA would not have had a motivation to combine the teachings of Dr. Fassihi's references with one another because the references teach entirely different formulation approaches and teach away from each other."), ¶¶ 182–203 █████████████████████████████████

Alvogen first disclosed the Goldstein reference in its final invalidity contentions after the close of fact discovery. *Compare* Ex. Y, Alvogen's Initial Invalidity Contentions (Aug. 28, 2019), at 110–18, *with* Ex. U, Alvogen's Final Non-Honigberg Patents Invalidity Contentions (Jan. 30, 2020), at 166–206. However, neither of the '857 Patent obviousness combinations Alvogen presented in Dr. Fassihi's opening report were raised in those contentions. Thus, Dr. Williams's rebuttal report was the first opportunity for Plaintiffs to address the Goldstein reference and Alvogen's obviousness combinations. There is no prejudice, as Dr. Fassihi responded to Dr. Williams's validity opinions in his reply report, and Defendants took Dr. Williams's deposition. *See, e.g.*, Ex. Q, Fassihi Reply Rpt. ¶¶ 99–100, 103.

**D.     There is no basis to strike Dr. Reider's non-obviousness opinions**. Defendants apparently seek to strike opinions from Dr. Reider's rebuttal report concerning non-obviousness of the '309, '711, and '091 Patents. Defendants' request (to the extent Plaintiffs can decipher it) is puzzling because Plaintiffs' interrogatory responses clearly disclosed the positions that Defendants now seek to strike. *See* Ex. S (chart identifying example disclosures by Plaintiffs).

Dr. Reider's opinions were timely: they directly and properly rebutted Dr. Lepore's exact obviousness theories based on Hirst WO '829 and other references—theories not disclosed to Plaintiffs until after the close of fact discovery. Defendants never even mentioned Mao 2001, Mahajan 1999, Vassilev 2004, Uckun 2002, and EP '039 in their initial invalidity contentions related to the '309, '711, and '091 Patents. *See* Ex. Y, Alvogen's Initial Invalidity Contentions (Aug. 28, 2019), at 50–56, 74–77, 83–91; Ex. C, Defs.' Initial Invalidity Contentions (Nov. 5, 2018), at 99–101, 107–10, 112–13. That is why Defendants' letter only cites their final invalidity contentions—served ***after*** the close of fact discovery—and an email from February 17 (just two

---

9 ███████████████████████████████████████████████████████████████████████████████████

weeks before opening expert reports were set to be served) asking Plaintiffs to respond to a host of new theories.[10] Defs.' Ltr. Br. at 4. Plaintiffs properly responded in expert discovery to Defendants' theories. *See* Ex. EE, *Astellas Pharma*, C.A. No. 16-905-JFB-CJB, D.I. 438 at 6 (D. Del. May 15, 2019) ("Defendants had to have anticipated that Plaintiffs' Rebuttal Expert Reports regarding invalidity would say more than simply 'Defendants' experts are wrong.'"). Nor were Defendants prejudiced by Dr. Reider's rebuttal to Defendants' new obviousness arguments, as Dr. Lepore responded in his reply report to the very opinions Defendants now seek to strike. *See, e.g.*, Ex. T, Lepore Reply Rpt., § XV.B.2–3 (responding to Dr. Reider's WO '829 and Hirst Compound A opinions); ¶¶ 127–38, 183 (responding to Dr. Reider's analysis of Mao 2001); ¶¶ 184, 192 (responding to Dr. Reider's opinions on Schindler 1999).

**E. Plaintiffs' Section 112 and double-patenting responses are timely; Defendants' invalidity positions were a moving target through opening expert reports**. Defendants miss the mark in asserting that Drs. Reider, Myerson, and Rule's rebuttal reports contain untimely Section 112 and obviousness-type double patenting opinions. Defs.' Ltr. Br. at 4. Once again, Defendants do not identify with any specificity which opinions were purportedly undisclosed, but instead indiscriminately cite to hundreds of pages of expert reports. Defendants are mistaken for multiple reasons. *First*, although Defendants now argue that Plaintiffs' robust interrogatory responses were somehow insufficient to apprise them of Plaintiffs' positions, Defendants made no such argument during fact discovery, nor moved to compel Plaintiffs to provide more expansive responses. *See id.* (citing e-mail from D. Hanna, sent two months after the close of fact discovery and just 2.5 weeks before service of Opening Expert Reports).

*Second*, in offering the opinions that Defendants now challenge as untimely, Drs. Reider, Myerson, and Rule were responding to theories not adequately disclosed by Defendants until expert discovery. For example, Dr. Rule's purportedly untimely rebuttal regarding § 112 and obviousness-type double patenting responded to opinions from Alvogen's expert Dr. Grossbard, who advanced arguments that were not developed in invalidity contentions. Indeed, Alvogen's initial contentions—the only contentions Alvogen served during fact discovery—***did not contain a single § 112 theory related to the '090 Patent***. *See* Ex. Y, Alvogen's Initial Invalidity Contentions (Aug. 28, 2019), at 81–83. Moreover, Alvogen's obviousness-type double patenting section contained a single paragraph, with no analysis, based on three claims in two different patents. *See id.* at 83. In his opening report, Dr. Grossbard went far beyond the scope of these disclosures, including three wholly new § 112 challenges to the '090 Patent, Ex. V, Grossbard Opening Rpt. ¶¶ 180–201, and providing **28 pages** of obviousness type double patenting theories, based on a selection of "at least" 10 claims, *id.* ¶¶ 326–72. Plaintiffs responded to these greatly expanded theories at the first opportunity, *i.e.*, in Dr. Rule's rebuttal report.

As with Dr. Grossbard, the opinions now advanced by Drs. Lepore (on behalf of Alvogen and Zydus) and Fassihi (on behalf of Alvogen) regarding the '309, '711, and '091 Patents were not adequately disclosed during fact discovery. Dr. Lepore's opening report went far beyond the

---

[10] Defendants' Final Contentions contain two combinations with **over 20 references apiece** for each of the '309 Patent, '711 Patent, and '091 Patents. Ex. DD, Defs.' Honigberg Patents Final Invalidity Contentions (Jan. 30, 2020), at 126–33, 194–95, 223–24. Defendants failed to inform Plaintiffs of their obviousness theories until expert discovery. They should not now be able to benefit from the shortcomings in their own contentions.

7

scope of Defendants' invalidity contentions—including dozens of pages of additional written description, enablement, and indefiniteness theories for the '309, '711, and '091 Patents. *See* Ex. X, Lepore Opening Rpt. ¶¶ 361–98, 452–73, 487–97, 499–505. Alvogen and Zydus's initial invalidity contentions collectively contained less than two pages devoted to arguing that a single claim of the '309 Patent is not enabled; a single paragraph that the term "compound" in the '711 Patent is indefinite; and ***no § 112 theories*** for the '091 Patent. *See* Ex. C, Defs.' Initial Invalidity Contentions (Nov. 5, 2018), at 100–01; Ex. Y, Alvogen's Initial Invalidity Contentions (Aug. 28, 2019), at 53–54, 76. Similarly, Dr. Fassihi's opinions go far beyond the scope of Defendants' invalidity contentions, relying on Dr. Lepore's opinions, while also advancing his own new indefiniteness theories for the '309 and '091 Patents. *See* Ex. W, Fassihi Opening Rpt. ¶¶ 436–47, 461–62. Dr. Reider's rebuttal opinions directly responded to these § 112 theories.

There is also no basis to strike Dr. Myerson's opinions, which are directly responsive to Defendants' experts. Alvogen's expert, Dr. Swift, offered numerous boilerplate opinions on § 112 and obviousness-type double patenting for the '753, '455, and '548 Patents, to which Dr. Myerson responded (to the extent there was analysis to which he could respond).[11] However, Alvogen's initial contentions (the only contentions it served during fact discovery) ***did not contain a single § 112 theory*** for these patents. Ex. Y, Alvogen's Initial Invalidity Contentions (August 28, 2019), at 103–06, 118–20, 130–32. Moreover, the double patenting theories in Alvogen's initial contentions were mere boilerplate—six paragraphs in total across the '753, '455, and '548 Patents—devoid of analysis sufficient to put Plaintiffs on notice of Alvogen's actual invalidity theories. *Id.* Alvogen's opening expert report went well beyond these disclosures, advancing ***172 paragraphs*** on double patenting and introducing a host of new references. *Compare* Ex. Z, Swift Opening Rpt., at ¶¶ 219–90, 343–95, 436–82, *with* Ex. Y, Alvogen's Initial Invalidity Contentions (August 28, 2019), at 103–106, 118–120, 130–132.[12] Zydus likewise made barely any effort to articulate a meaningful § 112 theory during fact discovery. Its initial contentions do not address the '548 patent, and its supplemental contentions contained only three paragraphs. Ex. AA, Defs' Suppl. Invalidity Contentions, at 99–103. In stark contrast, Zydus served a 150-paragraph expert report on § 112 issues for the '548 Patent. *Compare* Ex. BB, Steed Opening Rpt., *with* Ex. AA at 99–103.

Finally, there is no basis for Defendants to claim prejudice based on the rebuttal opinions of any of Plaintiffs' experts. Indeed, Defendants submitted reply reports responding to precisely the opinions they now challenge—with no complaint of prejudice, surprise, or any impairment of their ability to prepare a response—and took depositions of Plaintiffs' experts. If Defendants believed these opinions were untimely, they should have raised the issue and sought relief from the Court promptly upon receipt of Plaintiffs' rebuttal reports. Waiting three months to complain of lateness or prejudice after reply reports and depositions—with trial approaching—rings hollow.

---

[11] Defendants' motion does not identify the '140 Patent, but nevertheless identifies paragraphs to be stricken that address the '140 Patent.

[12] Alvogen's initial contentions did not include double patenting contentions based on the '309, '711, '403, '079, or '257 Patents, against any of the '753, '455, '548, and '140 Patents, or double patenting contentions based on the '455 Patent against the '753 Patent.

        Respectfully,

        */s/ Jeremy A. Tigan*

        Jeremy A. Tigan (#5239)

Enclosures
cc:   Clerk of the Court (w/encls.)
       Counsel of Record (by e-mail, w/encls.)