IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PHARMACYCLICS LLC and JANSSEN BIOTECH, INC.

Plaintiffs,

v.

CIPLA LTD, et al.,

Defendants.

C. A. No.: 18-192-CFC (CJB) (CONSOLIDATED)

**REDACTED - PUBLIC VERSION**

---

PHARMACYCLICS LLC and JANSSEN BIOTECH, INC.

Plaintiffs,

v.

ALVOGEN PINE BROOK LLC and NATCO PHARMA LTD.,

Defendants.

C. A. No.: 19-434-CFC (CJB)

**REDACTED - PUBLIC VERSION**

**DEFENDANTS' REPLY IN SUPPORT OF**
**THEIR MOTION TO STRIKE PLAINTIFFS' UNTIMELY OPINIONS**

Dear Judge Burke:

Defendants Alvogen Pine Brook LLC, Natco Pharma Ltd. (together, "Alvogen"), and Zydus Worldwide DMCC and Cadila Healthcare Ltd. (collectively, "Defendants") submit this reply in support of their motion to strike. Defendants' motion established that Plaintiffs withheld wholesale categories of validity theories[1] (collectively, the "Challenged Theories") during discovery, surprising Defendants with voluminous untimely opinions in expert reports. Plaintiffs' opposition does not seriously contest that their disclosures were late. While Plaintiffs argue that their scant discovery disclosures somehow put Defendants "on notice" of "positions" they would advance, Plaintiffs fail to show that their discovery responses in fact disclosed *any* of the Challenged Theories. Plaintiffs instead offer unconvincing excuses asking the Court to allow the Challenged Theories *even though* Plaintiffs prejudicially withheld them.

*First*, Plaintiffs inaccurately claim Defendants did not articulate how the Challenged Theories are prejudicial, ignoring the detailed arguments in Defendant's motion. D.I. 232, 438, at 2, 4-5 (disclosures deprived Defendants of ability to investigate theories during discovery (and Plaintiffs continue to block this discovery), forced Defendants to scramble to preserve their positions, and required (and continue to require) diversion of trial preparation resources).[2] Plaintiffs' opposition even identifies an example of this prejudice, noting that Defendants did not pursue certain depositions that became relevant *because of* the Challenged Theories. D.I. 244, 449, at 4 (arguing Defendants should have taken researcher depositions before Plaintiffs' disclosure). Plaintiffs also have the prejudice analysis backwards—their voluminous untimely theories are facially prejudicial *because* Plaintiffs withheld them during discovery. *Apotex, Inc. v. Cephalon, Inc.*, 2015 WL 12645745, at *2 (E.D. Pa. May 26, 2015) ("Prejudice is inherent when deadlines are disregarded in complex cases with extensive discovery . . . .").[3]

*Second*, Plaintiffs contend that they were entitled to withhold the Challenged Theories until rebuttal expert reports, because those reports allegedly responded to Defendants' final invalidity contentions, and there was no "opportunity" to respond earlier. This argument is not credible in light of Plaintiffs' incorrect claim that they *did disclose some* Challenged Theories in a February 10, 2020 supplemental interrogatory response (discussed below). Moreover, Plaintiffs failed to explain why Defendants' timely service of final invalidity contentions would relieve Plaintiffs of their duty to supplement under Rule 26(e). *Woods v. DeAngelo Marine Exhaust, Inc.*, 692 F.3d 1272, 1283 (Fed. Cir. 2012) (affirming decision to strike untimely contentions due to party's failure to timely supplement during discovery). Plaintiffs admit that they had at least a month to do so "before opening expert reports were originally due" (a deadline that was extended two weeks (D.I. 179, 358)), but omit that they had 3.5 months to

---

[1] Plaintiffs wrongly argue that Defendants did not identify the arguments Defendants seek to strike, although Plaintiffs had no problem finding them. Defendants clearly identified which opinions should be stricken, as each was highlighted in Appendix A and cited in Defendants' letter. That there are "hundreds of pages" of improper opinions is Plaintiffs' fault alone.

[2] If the Court denies the present motion, Defendants renew their discovery motion, D.I. 222, 424 (which likewise identified prejudice caused by the Challenged Theories), and ask for a date certain by which Plaintiffs must provide that discovery.

[3] *See also Intellectual Ventures I LLC v. AT&T Mobility LLC*, 2017 WL 658469, at *6 (D. Del. Feb. 14, 2017) (challenged opinions "prejudiced Defendants, who were 'unable to conduct a proper fact investigation and secure rebuttal evidence' . . . during fact discovery.").

disclose these theories before the deadline for rebuttal reports. D.I. 188, 379, at 1. Indeed, when Defendants asked Plaintiffs to supplement their responses, Plaintiffs refused, telling Defendants that they were "aware of no authority" requiring them to do so. Ex. 1, 02-13-20 Email to D. Hanna. Plaintiffs' election to withhold voluminous contentions only supports exclusion.

*Third*, Plaintiffs attempt to shift their discovery obligations onto Defendants, arguing that Defendants should have moved to compel the Challenged Theories, or if not, moved to strike sooner. D.I. 244, 449, at 2. This argument is contrary to the Federal Rules, which required Plaintiffs to timely supplement their responses "if the party learns that in some material respect the disclosure or response is incomplete . . . ." Fed. R. Civ. P. 26(e); *see also Eli Lilly & Co. v. Dr. Reddy's Labs., Ltd.*, 2017 WL 1531834, at *5-6 (S.D. Ind. Apr. 28, 2017) ("[T]hat DRL could have filed a motion seeking to compel Lilly to supplement its contentions, but did not do so, does not relieve Lilly of any consequences coming from its late disclosures . . . ." (citing *Teashot LLC v. Green Mountain Coffee Roasters, Inc.*, 2014 WL 485876, at *6-7 (D. Colo. Feb. 6, 2014) ("A party has the right to assume that opposing counsel is acting with diligence, and in compliance with the Federal Rules of Civil Procedure, during discovery.")). While Defendants believed Plaintiffs' discovery responses to be deficient, Defendants could not have known Plaintiffs would advance the Challenged Theories until Plaintiffs disclosed them. That is why Defendants warned Plaintiffs that Defendants would move to strike untimely theories.[4] *E.g.*, Ex. 2, 02-10-20 Email ("Defendants will seek appropriate relief . . . including . . . moving to strike any new argument in Plaintiffs' expert reports on secondary considerations").

Plaintiffs' opposition further fails to demonstrate why any particular Challenged Theory should remain in the case. While Defendants cannot catalog every deficiency in Plaintiffs' letter here, Defendants identify the following:

**The Late "Antedating" Theory**: Plaintiffs incredibly argue that they somehow put Defendants on notice of their "antedating" theory by generically disputing that *all* of Defendants' asserted references, across all of the dozens of asserted patents and claims, constitute prior art. This is no notice at all, and Plaintiffs' suggestion that Defendants should have found a way to extract theories and facts that "were available" only to Plaintiffs is ludicrous. Plaintiffs also inaccurately claim that Defendants' initial invalidity contentions did not give "specific information" to connect the "antedated" references with the '090 Patent. Defendants in fact asserted those references against the '090 Patent. *See* Ex. 3, Defs' Initial Cont., at 147 (asserting Advani 2010 and Roth 2010 against the '090 Patent, contending (for example) "it was obvious to use ibrutinib to treat MCL . . ." including because the references "disclose the results of MCL patients treated with PCI-32765" in clinical trials). Plaintiffs chose not to disclose their theory during discovery, prejudicing Defendants. Ex. 4, 08-03-20 Hr'g Tr., at 33:13-16 ("If all Dr. Buggy is doing is simply pointing out where in the record there is factual material that he had been cataloguing together, why a need to submit the declaration at all?").

**Untimely Secondary Considerations**: Plaintiffs' description of their secondary considerations discovery disclosures succeeds only in showing that Plaintiffs failed to timely disclose why *any* secondary consideration allegedly relates to *any* asserted claim of *any* asserted

---

[4] Defendants filed their motion to strike sufficiently in advance of trial to permit resolution of the dispute and did so in the same timeframe Plaintiffs moved to strike. Plaintiffs' argument that Defendants delayed in filing their motion to strike is another red herring, and in no way excuses Plaintiffs' untimely service of expert opinions which prejudice Defendants.

patent. *See* D.I. 244, 449, at 5 (describing secondary considerations only in relation to ibrutinib, not to the claims). Plaintiffs' bare contention in their February 10, 2020 supplemental interrogatory response "*that* Imbruvica capsules and tablets are commercial embodiments" of the claims (*id.* (emphasis added)) did not, for example, notify Defendants *how* Plaintiffs would so contend—the information Plaintiffs withheld until they surprised Defendants with "hundreds of pages" of new arguments now subject to Defendants' motion. Absent any attempt to show "nexus," Plaintiffs' contentions were useless, which is why Defendants warned Plaintiffs that Defendants would move to strike if Plaintiffs withheld the theories during discovery. Ex. 2, 02-10-20 Email from D. Hanna to Plaintiffs. Plaintiffs' untimely opinions advancing those theories deprived Defendants of the opportunity to fairly investigate them, and they should be stricken.

**Dr. Williams's Untimely '857 Patent Interpretation**: Plaintiffs do not dispute that they failed to disclose their "immediate release" interpretation of the '857 Patent claims prior to Dr. Williams's rebuttal report. However, their opposition tries to contradict Dr. Williams's opinion that the claims are limited to "immediate release" formulations—an opinion Dr. Williams confirmed at his deposition (Ex. 5, 08-15-20 Williams Dep., at 301:19–303:16), as he must, because otherwise his effort to distinguish prior art on the ground that it allegedly did not disclose "immediate release" formulations would be meaningless. Plaintiffs cannot excuse their new interpretation on the ground that Dr. Williams addressed prior art asserted in final invalidity contentions. The interpretation relates to the scope of the claims (for example, Alvogen does not infringe the '857 Patent under Dr. Williams's interpretation (D.I. 232, 438, at 3-4)) and should have been disclosed (at least) in infringement contentions or (at the latest) in the February 2020 interrogatory response that Plaintiffs' letter claimed disclosed some of the Challenged Theories.

**Dr. Reider's Late Non-Obviousness Theory**: Plaintiffs do not credibly dispute that they failed to timely address Defendants' position that the Compound Patents are obvious in view of Hirst Compound A and the 6 other references listed in Defendants' motion. Instead, they try to excuse their failure in a series of contradictory arguments. On the one hand, Plaintiffs incorrectly claim that their interrogatory responses "disclosed the positions" challenged in Defendants' motion (the responses in fact failed to address *any* of these references). On the other hand, Plaintiffs claim they had no opportunity to address these prior art references before expert reports, because some were contained in final invalidity contentions, served *before* Plaintiffs supplemented their validity responses in February 2020. That Plaintiffs amended their validity positions *after* Defendants' final invalidity contentions squarely contradicts the position that Plaintiffs had no "opportunity" to disclose the challenged non-obviousness theories sooner.

**Plaintiffs' Late Section 112 and Double-Patenting Theories**: Plaintiffs concede that they failed to disclose the challenged § 112 and double-patenting theories during discovery. Instead, Plaintiffs claim that their "first opportunity" to disclose these "hundreds of pages" of positions was in rebuttal reports, because Alvogen allegedly did not include its § 112 and double patenting theories in its *initial* invalidity contentions. Plaintiffs are wrong (as one example, contrary to Plaintiffs' opposition, Alvogen's initial contentions *did* assert § 112 arguments for the '091 Patent (Ex. 6, Alvogen Initial Cont., at 88-89)), but in any event there is no credible dispute that Alvogen timely disclosed these theories by the deadline for *final* contentions. Plaintiffs admittedly updated some of their validity positions in February 2020, *after* Alvogen's final invalidity contentions, but did not disclose the Challenged Theories for 3.5 months, until serving rebuttal expert reports. Plaintiffs did not disclose them by their "first opportunity."

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ James L. Higgins*

Melanie K. Sharp (No. 2501)
James L. Higgins (No. 5021)
Steven W. Lee (No. 6676)
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
msharp@ycst.com
jhiggins@ycst.com
slee@ycst.com

*Attorneys for Alvogen Pine Brook LLC and Natco Pharma Ltd.*

OF COUNSEL

PROSKAUER ROSE LLP
Siegmund Y. Gutman
David M. Hanna
Michelle M. Ovanesian*
Christopher D. Lynch
2029 Century Park East, Suite 2400
Los Angeles, CA 90067-3010
(310) 557-2900

Kimberly Q. Li
One International Place
Boston, MA 02110-2600
(617) 526-9600

*Admitted to Practice in Delaware and Washington D. C. Only

POTTER ANDERSON &CORROON LLP

*/s/ David E. Moore*

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
(302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com

*Attorneys for Defendants Zydus Worldwide DMCC and Cadila Healthcare Limited*

OF COUNSEL:

KASOWITZ BENSON TORRES LLP
Jay R. Deshmukh
Shelley Ivan
Hershy Stern
Jayita Guhaniyogi, Ph.D.
M. Diana Danca
Trevor J. Welch
1633 Broadway
New York, NY 10019
(212) 506-1700

Dated: August 20, 2020

**CERTIFICATE OF SERVICE**

I, Steven W. Lee, Esquire, hereby certify that on August 20, 2020, I caused to be electronically filed a true and correct copy of Defendants' Reply In Support of Their Motion to Strike Plaintiffs' Untimely Opinions with the Clerk of the Court using CM/ECF, which will send notification to the following counsel of record:

Jack B. Blumenfeld
Jeremy A. Tigan
Jennifer A. Ward
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@mnat.com
jtigan@mnat.com
jward@mnat.com

I further certify that on August 20, 2020, I caused a copy of the foregoing document to be served on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

**BY E-MAIL**

Christopher N. Sipes
Erica N. Andersen
David A. Garr
Brianne Bharkhda
Chanson Chang
Nicholas L. Evoy
Justin Thomas Howell
Laura Dolbow
Covington & Burling LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001-4956
csipes@cov.com
eandersen@cov.com
dgarr@cov.com
bbharkhda@cov.com
cchang@cov.com
nevoy@cov.com
jhowell@cov.com
ldolbow@cov.com

Irena Royzman
Christine Willgoos
Cristina L. Martinez
Marcus A. Colucci
Kramer Levin Naftails & Frankel LLP
1177 Avenue of the Americas
New York, NY 10036
(212) 715-9100
iroyzman@kramerlevin.com
cwillgoos@kramerlevin.com
cmartinez@kramerlevin.com
mcolucci@kramerlevin.com

Hanna Lee
Daniel Williams
Kramer Levin Naftails & Frankel LLP
990 Marsh Road
Menlo Park, CA 94025
(650) 752-1700
hlee@kramerlevin.com

Alexa Hansen
David Denuyl
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105
ahansen@cov.com
ddenuyl@cov.com

*Attorneys for Pharmacyclics LLC*

ddwilliams@kramerlevin.com

*Attorneys for Janssen Biotech, Inc.*

*/s/ Steven W. Lee*
Steven W. Lee (No. 6676)

26936511.1

# Exhibits 1-6 Redacted in Their Entirety