IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PHARMACYCLICS LLC and JANSSEN BIOTECH, INC., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | C.A. No. 19-434 (CFC) (CJB) |
| ALVOGEN PINE BROOK LLC and NATCO PHARMA LTD., | ) ) ) ) | **PUBLIC VERSION** **Confidential Version Filed: February 6, 2023** **Public Version Filed: February 21, 2023** |
| Defendants. | ) ) | |

**OPENING BRIEF IN SUPPORT OF PLAINTIFFS'
MOTION FOR ATTORNEYS' FEES AND EXPERTS' FEES**

# **TABLE OF CONTENTS**

I.     NATURE AND STAGE OF PROCEEDINGS.................................................. 1

II.    SUMMARY OF THE ARGUMENT .............................................................. 1

III.   STATEMENT OF FACTS .............................................................................. 3

IV.   LEGAL STANDARD .................................................................................... 4

V.    ARGUMENT.................................................................................................. 6

      A.    Plaintiffs Are the Prevailing Parties For All Purposes......................... 6

      B.    This Case Is "Exceptional" ................................................................. 6

      C.    Plaintiffs Should Be Awarded Reasonable Attorney Fees................. 18

      D.    An Award of Expert Fees Is Warranted Under the Court's
            Inherent Authority ............................................................................. 21

VI.   CONCLUSION............................................................................................ 22

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Automated Bus. Cos., Inc. v. NEC Am., Inc.*,
  202 F.3d 1353 (Fed. Cir. 2000) ...........................................................................5

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983)...........................................................................................18

*Howes v. Med. Components, Inc.*,
  761 F. Supp. 1193 (E.D. Pa. 1990).....................................................................19

*MarcTec, LLC v. Johnson & Johnson*,
  664 F.3d 907 (Fed. Cir. 2012) ....................................................................*passim*

*Mathis v. Spears*,
  857 F.2d 749 (Fed. Cir. 1988) .....................................................................18, 19

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
  572 U.S. 545 (2014)...............................................................................1, 2, 4, 5

*Perdue v. Kenny A. ex rel. Winn*,
  559 U.S. 542 (2010)......................................................................................19, 20

*Philips Elecs. N. Am. Corp. v. Compo Micro Tech, Inc.*,
  No. 02-123-KAJ, 2006 WL 3020724 (D. Del. Oct. 23, 2006)............................5

*SFA Sys., LLC v. Newegg Inc.*,
  793 F.3d 1344 (Fed. Cir. 2015) ...........................................................................2

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
  13-CV-1534, 2020 WL 1285915 (D. Del. Mar. 18, 2020) (*aff'd in
  part, rev'd in part on other grounds*, 14 F.4th 1323 (Fed. Cir.
  2021), *cert. denied*, 142 S. Ct. 2732 (2022))....................................................20

*Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*,
  549 F.3d 1381 (Fed. Cir. 2008) .....................................................................5, 20

*Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*,
  No. 03-cv-8253-DLC, 2007 WL 840368 (S.D.N.Y. Mar. 21, 2007).......5, 20, 21

**Statutes**

35 U.S.C. § 285 ..............................................................................................*passim*

**Other Authorities**

21 C.F.R. § 314.95(c)(7) ...............................................................................8

Pursuant to 35 U.S.C. § 285 and the Court's inherent authority, Plaintiffs Pharmacyclics LLC and Janssen Biotech, Inc. (collectively, "Plaintiffs") move for an award of attorneys' and experts' fees from Defendants Alvogen Pine Brook LLC and Natco Pharma Ltd. (collectively, "Alvogen") based on Alvogen's unreasonable litigation positions and vexatious conduct.

## I.      NATURE AND STAGE OF PROCEEDINGS

This is a patent infringement action brought under the Hatch-Waxman Act. Following a bench trial, this Court found infringement and rejected Alvogen's invalidity defenses for all asserted claims of four patents. D.I. 352; D.I. 357. On Alvogen's appeal, the Federal Circuit affirmed this Court's judgment of validity of all asserted claims of all four patents. *See* Ex. 1, Federal Circuit Opinion.

## II.     SUMMARY OF THE ARGUMENT

Alvogen's pattern of unreasonable litigation positions and vexatious conduct make this an "exceptional" case that "stands out from others." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). Throughout this case, Alvogen took frivolous positions and advanced baseless arguments that needlessly expanded the litigation and were a drain on Plaintiffs' and the Court's resources. *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 920-21 (Fed. Cir. 2012) (affirming fee award where a party "persisted in advancing unfounded arguments

that unnecessarily extended th[e] litigation and caused [the opposing party] to incur needless litigation expenses").

Without reasonable defenses, Alvogen chose to litigate in a manner that needlessly drove up litigation costs. For example, Alvogen insisted on duplicative claim construction proceedings, forced Plaintiffs to file unnecessary infringement contentions and expert reports, and continually shifted its validity defenses, even after trial. The natural—and no-doubt intended—consequence was a significant waste of the Court's and Plaintiffs' resources on unwarranted disputes and issues.

The award of fees here is appropriate to provide Plaintiffs redress for Alvogen's egregious pattern of behavior, and to deter such behavior in future patent litigation matters before this Court. *Octane*, 572 U.S. at 554, n.6 (relevant Section 285 considerations include "the need in particular circumstances to advance considerations of compensation and deterrence."). Alvogen's conduct warrants an exceptional case determination. *MarcTec*, 664 F.3d 907, 919 (explaining "it is well-established that litigation misconduct and 'unprofessional behavior may suffice, by themselves, to make a case exceptional under § 285,'" and "vexatious conduct is, by definition, litigation misconduct") (internal citation omitted); *see SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1349 (Fed. Cir. 2015) (holding "unreasonable and vexatious litigation tactics" can support an exceptional case finding post-*Octane*).

Thus, reasonable attorneys' fees and expenses should be awarded to Plaintiffs under Section 285. Additionally, Plaintiffs should be awarded their reasonable expert fees as a sanction for Alvogen's conduct.

## III.   STATEMENT OF FACTS

This patent infringement action involves Plaintiffs' lifesaving cancer treatment, IMBRUVICA® (ibrutinib). Alvogen filed an ANDA seeking approval for generic ibrutinib tablets, which indisputably used the same compound, polymorph, formulation and method of treating relapsed/refractory mantle cell lymphoma (R/R MCL) claimed in Plaintiffs' patents.

The action against Alvogen ("Alvogen Action") was litigated alongside a related action involving a number of other defendants seeking approval for generic versions of Plaintiffs' IMBRUVICA® capsules: C.A. No. 18-192 (CFC) (the "Capsule Action"). The Alvogen and Capsule Actions involved overlapping and related patents and issues. The actions were not fully consolidated, D.I. 115, but were coordinated with respect to, *inter alia*, overlapping fact and expert discovery. D.I. 137 at 5-7.

The Alvogen and Capsule Actions were tried together in a seven-day bench trial in October 2020. At trial, Plaintiffs asserted different patents in each action. Plaintiffs and the remaining defendant in the Capsule Action, Sandoz, settled after trial, leaving only the Alvogen Action to be decided. C.A. No. 18-192, D.I. 561. On

3

August 19, 2021, the Court issued a 91-page Memorandum Opinion finding infringement and rejecting Alvogen's invalidity defenses as to all asserted claims. D.I. 352. The Court entered final judgment in Plaintiffs' favor on August 30, 2021. D.I. 357.

Alvogen appealed (D.I. 360) and argued that this Court's decision should be reversed in all respects. *See* Ex. 2, Alvogen's Opening Brief at 3-4. On November 15, 2022, the Federal Circuit affirmed this Court's decision in full. *See* Ex. 1, Federal Circuit Opinion.

## IV.   LEGAL STANDARD

In a patent infringement case, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. "[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane*, 572 U.S. at 554. The Court must consider the totality of the circumstances—including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence"—in reaching its conclusion. *Id.* at 554, n.6 (internal quotation marks and citation

omitted), 557-58. Conduct need not be independently sanctionable for fees to be awarded. *Id.* at 555.

If a case is found "exceptional," then the decision to award attorneys' fees under Section 285 is "within the discretion of the trial judge." *Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*, 549 F.3d 1381, 1385 (Fed. Cir. 2008). "The methodology of assessing a reasonable award under 35 U.S.C. § 285 is [also] within the discretion of the district court." *Automated Bus. Cos., Inc. v. NEC Am., Inc.*, 202 F.3d 1353, 1355 (Fed. Cir. 2000). "Courts may award reimbursement of certain expenses when the expenses are reasonable, necessary to the prosecution of the litigation, and adequately documented." *Philips Elecs. N. Am. Corp. v. Compo Micro Tech, Inc.*, No. 02-123-KAJ, 2006 WL 3020724, at *6 (D. Del. Oct. 23, 2006); *see also Takeda*, 549 F.3d at 1391 (acknowledging that, under 35 U.S.C. § 285, the court may award "attorney fees and related expenses").

Additionally, "a district court may invoke its inherent power to impose sanctions in the form of reasonable expert fees." *Takeda*, 549 F.3d at 1391 (affirming award of expert fees based on the district court's findings of "bad faith and vexatious litigation conduct"); *MarcTec*, 664 F.3d at 921-22 (citation and quotation marks omitted) (affirming award of expert fees where "vexatious conduct and bad faith increased the cost of litigation in ways that are not compensated under § 285").

## V.     ARGUMENT

### A.     Plaintiffs Are the Prevailing Parties For All Purposes

There is no question that Plaintiffs are the "prevailing part[ies]." *See* 35 U.S.C.

§ 285. This Court held that Alvogen infringed all claims asserted at trial, rejected

Alvogen's positions as to alleged invalidity of those claims, and held that the FDA

may not approve Alvogen's ANDA until expiration of all patents asserted at trial.

D.I. 357. The Federal Circuit affirmed in full. Ex. 1, Federal Circuit Opinion; Ex. 3,

Federal Circuit Judgment.

### B.     This Case Is "Exceptional"

Alvogen's pattern of unreasonable litigation positions and vexatious conduct

make this case exceptional. Exemplary instances of Alvogen's conduct are detailed

below.

*Alvogen Demanded Unnecessary Claim Construction.* Plaintiffs filed the

Alvogen Action on March 1, 2019—after Markman briefing in the Capsule Action

was underway. *See* C.A. No. 18-192, D.I. 101. The Court held a Markman hearing

and ruled on claim construction in the Capsule Action on May 20, 2019. C.A. No.

18-192, D.I. 169. Alvogen nonetheless insisted that a second claim construction

proceeding was needed even for "claim terms in patents that overlap with the

Capsule Action." D.I. 30 at 2-3. Alvogen assured the Court it was "not looking to

unnecessarily reconstrue terms or have the Court spend resources to reconstrue terms

unnecessarily that have already been addressed." Ex. 4, 9-4-2019 Tr. 31:3-13. But that is exactly what Alvogen did.

Alvogen asked the Court to re-construe terms already construed in the Capsule Action, including basic terms such as "compound" and "crystalline form." *See* D.I. 127 at i-ii, 1-3; Ex. 5, 1-13-2020 Tr. 19:10-17, 20:9-14. Then, after the filing of the joint claim construction chart, Alvogen demanded an emergency call with the Court to complain about Plaintiffs' proposed plain meaning constructions (constructions the Court ultimately adopted). *See generally* Ex. 6, 10-10-2019 Tr. 4:22-26:11; D.I. 168. The Court concluded that there was no "emergency," stating that the call was "inappropriate" and "unnecessary." *Id.* at 23:10-17; Ex. 5, 1-13-2020 Tr. 62:16-63:1 ("THE COURT…[C]onvening that emergency call was not good. That was an unnecessary call. I moved stuff, got on the phone, and I do fault the defendants for that call, especially after reading that Markman—reading the briefing. That was an inappropriate request.").

Nevertheless, Alvogen continued to pursue unwarranted claim construction arguments that had already been rejected in the Capsule Action. *See, e.g.*, Ex. 5, 1-13-2020 Tr. 38:25-39:3 ("We talked about this when we did the scheduling of this case. I mean, I don't do Markmans for sport. I spent a lot of time preparing for the last Markman hearing."); 37:24-38:3 ("Did you read the transcript of the [Capsule Action] Markman hearing? ... I feel like this is déjà vu, isn't it?"); 21:20-21 ("That

was the same argument that was made to me, right, in the capsule hearing."); *see also id.* at 22:21-23:21, 38:19-20. The Court rejected Alvogen's duplicative arguments.

***Alvogen Maintained Frivolous Non-Infringement Positions.*** Alvogen's infringement of the asserted patents was clear from the outset of the case because Alvogen duplicated Plaintiffs' IMBRUVICA® tablets exactly—including the active ingredient, crystalline form, formulation, and R/R MCL indication—and was well aware that each such feature is claimed in Plaintiffs' Orange Book-listed patents. In fact, Alvogen did not include ***any non-infringement arguments*** for at least one claim of each of the patents in its Paragraph IV Notice Letters. *See* Ex. 7, 7-31-2019 Andersen Email at 1; Ex. 4, 9-4-19 Tr. 26:1-27:1; *see also* 21 C.F.R. § 314.95(c)(7) (Paragraph IV notice should include a "full and detailed explanation of the grounds supporting" non-infringement on a claim-by-claim basis). Yet, Alvogen steadfastly and baselessly refused to admit infringement, forcing Plaintiffs to serve expert infringement reports and prepare to present an infringement case at trial.

In an attempt to focus the litigation and avoid unnecessary expenses, Plaintiffs first requested that Alvogen stipulate to infringement in July 2019. Ex. 8, 7-16-2019 Andersen Email. Alvogen declined. *See, e.g.*, Ex. 7, 7-31-2019 Andersen Email and Alvogen Responses at 1-5. Thus, Plaintiffs were forced to serve comprehensive infringement contentions. *See* D.I. 33. Even then, instead of stipulating to

infringement, Alvogen attempted to argue non-infringement based on meritless claim construction positions. *See generally* Ex. 9, 12-17-2019 Defs.' First Suppl. Responses to Interrog. No. 1.

The Court rejected Alvogen's proposed constructions from the bench at the *Markman* hearing. *See, e.g.*, Ex. 5, 1-13-2020 Tr. 21:11-22:3, 23:16-18, 27:21-25, 44:12-14. Plaintiffs' counsel then raised the concern that Alvogen would force Plaintiffs to incur the expense of infringement expert reports on issues that were not reasonably disputable. Ex. 5, 1-13-2020 Tr. 59:3-61:25, 66:17-67:14, 68:21-69:19. The Court warned Alvogen that fee shifting could be appropriate if it "didn't have a meaningful noninfringement expert report." *Id.*, 60:24-61:14 ("So is there a way to maybe make [Alvogen] pay for your experts if they don't similarly engage an expert, and it wouldn't be enough to just have a pro forma expert rebuttal report that just says, you know, denied, denied, denied…[I]f they didn't have a meaningful noninfringement expert report, maybe they pay for yours."); s*ee also id.*, 64:16-20 ("[W]ould you all just agree that the loser pays expert fees on infringement? That makes sense. We agree up front who should pay expert fees on infringement.").

With Alvogen's proposed constructions rejected, Plaintiffs again requested that Alvogen stipulate to infringement of a specific list of claims prior to serving final infringement contentions and expert reports. Ex. 10, 1-16-2020 Royzman

Email at 1-2. Alvogen declined. Ex. 11, 1-22-2020 Stipulation Emails at 1-3; D.I. 164, Ex. 12, 2-25-2020 Andersen Email at 1-2.[1]

When the case reached expert discovery, Alvogen ignored the Court's admonition to make efforts to avoid the service of needless expert reports. Plaintiffs served infringement expert reports for which Alvogen did not serve any rebuttal, including for the '309, '090, and '455 Patents.[2] *See* D.I. 276, ¶ 126; Ex. 16, Reider Infringement Report at i-ii; Ex. 17, Rule Infringement Report at i; Ex. 18, Myerson Infringement Report at ii.

Alvogen forced Plaintiffs to continue litigating infringement of the '309, '090, and '455 Patents until the eve of trial, finally stipulating the day before trial. D.I. 295 (filed October 12, 2020). In the stipulation, Alvogen acknowledged that it had no basis to contest infringement "[i]n view of the Court's Claim Construction Order," which had issued *over eight months prior*. *See* D.I. 295, ¶¶ 1-2.

---

[1] Plaintiffs sought infringement stipulations from Alvogen at every stage of the case, to no avail. *See, e.g.*, Ex. 8, 7-16-2019 Andersen Email; Ex. 7, 7-31-2019 Andersen Email; Ex. 10, 1-16-2020 Royzman Email; Ex. 12, 2-25-2020 Andersen Email; Ex. 13, 3-26-2020 Royzman Email; Ex. 14, 5-1-2020 Royzman Emails at 1-5; Ex. 15, 9-17-2020 Royzman Emails.

[2] Alvogen served a rebuttal report disputing infringement of only a single claim of the ten asserted claims of the '455 Patent (dependent claim 10). D.I. 276, ¶ 126. Alvogen ultimately stipulated to infringement of claim 5 of the '455 Patent—the claim asserted and found valid at trial. D.I. 295.

Alvogen refused to stipulate to infringement of the '857 Patent, forcing Plaintiffs to present the issue at trial. At trial, Alvogen presented a non-infringement theory that it conceded was first disclosed "when [Alvogen] disclosed [the expert's] slides for his direct testimony." Ex. 19, Trial Tr. 285:20-288:17. The Court rejected Alvogen's theory and found the related expert testimony to be irrelevant and "unnecessary." Ex. 20, Trial Tr. 312:12-313:13. The Court rejected another of Alvogen's non-infringement theories because it was "untimely" and "waive[d]". Ex. 21, Trial Tr. 1979:18-25. The Court remarked that Alvogen's arguments were "frivolous" and "would factor in on fees." Ex. 22, Trial Tr. 1624:5-11; *see also id.* 1625:3-22.

***Alvogen's Ever-Changing Invalidity Positions Were Meritless.*** Alvogen likewise litigated invalidity issues in an unreasonable manner—pursuing a plethora of defenses it ultimately would not (and could not) maintain, and improperly raising new defenses at (and even ***after***) trial. In the month leading up to trial, Alvogen continued to assert nearly ***fifty*** different invalidity theories against the four patents that ultimately were tried. *See* Ex. 15, 9-17-2020 I. Royzman Email at 2-6. Alvogen purported to narrow its invalidity defenses two weeks before trial, but did so in a manner that obscured the precise theories it would advance at trial, despite Plaintiffs' follow-up requests for additional clarity. *See* Ex. 41, 10-1-2020 Royzman Email at

11

1. Alvogen then abandoned invalidity theories over the course of trial. Ex. 22, Trial Tr. 1616:8-1625:19.

Alvogen also abandoned numerous invalidity theories *after trial*. As the Court noted, "Alvogen did not pursue posttrial its earlier arguments that claim 10 [of the '309 Patent] is invalid for obviousness, lack of enablement, and lack of written description," even though valuable trial time and pages of expert reports and pretrial submissions were devoted to addressing them. D.I. 352 at 3, n.1 (citing Ex. 20, Trial Tr. 380:24-381:5, 400:21-23, 480:5-22; Ex. 23, 10-29-2020 Tr. 23:7-14).

Moreover, Alvogen continued its pattern of ever-shifting invalidity theories by raising *new* theories throughout trial and post-trial briefing. For example, at trial Alvogen argued that a term in the '309 Patent was indefinite. As the Court recognized, however, this was nothing more than a belated attempt to assert a new claim construction position. Ex. 19, Trial Tr. 69:4-79:20; Ex. 21, Trial Tr. 2064:4-23 ("They cannot bring that argument. That is a new argument.... [W]e have had claim construction and we just can't litigate like that. So that argument is waived."). Even after trial, Alvogen improperly continued to raise new theories, which Plaintiffs had to address. *See, e.g.*, D.I. 334 at 10 (addressing untimely best mode defense), 13 (addressing untimely anticipation defense), 41, n.12 (addressing untimely single-reference obviousness defense), 59, n.17 (addressing untimely non-

infringement and claim construction arguments). The Court rejected these new theories as waived. D.I. 352 at 14 n.4, 26, 56.

*Alvogen Knowingly Pressed Unfounded Allegations.* After months of litigation, Alvogen sought to amend its pleadings to introduce numerous new defenses, including allegations of inequitable conduct, improper Orange Book listing, patent misuse, and unclean hands. *See* D.I. 92 at 15-20; D.I. 88, Exs. 3-4 (showing redlines of newly added allegations and defenses). In doing so, Alvogen accused numerous inventors and prosecuting attorneys of deliberately carrying out fraud on the PTO by failing to disclose certain references during prosecution. *See* D.I. 92 at 16-19.

Alvogen's allegations were baseless, as Plaintiffs repeatedly informed Alvogen. As explained in Plaintiffs' Opposition to Alvogen's motion to amend, the material that Alvogen alleged was "withheld or misrepresented" was, in fact, *expressly disclosed* to the PTO. *See* D.I. 119 at 1-2, 5-18. This was apparent from a simple review of the References Cited on *the face of each patent*. D.I. 119 at 6-7, 11-12; D.I. 119, Ex. 2. For the remaining allegations of inequitable conduct, the material in question was disclosed during prosecution of parent applications, obviating the need to disclose them again in continuation applications as a matter of law. *See* D.I. 119 at 2-3, 8-12.

Plaintiffs sent multiple detailed letters alerting Alvogen to the unsupportable arguments in its pleadings and requesting withdrawal of such allegations. Ex. 24, 12-4-2019 Letter to Alvogen; Ex. 25, 12-5-2019 Letter to Alvogen. But rather than withdraw, Alvogen doubled down by filing a reply in support of its motion. *See* D.I. 139. Plaintiffs sent Alvogen yet another letter, addressing Alvogen's reply brief and reiterating the need for Alvogen to withdraw its allegations. Ex. 26, 1-4-2020 Letter to Alvogen.

Despite Plaintiffs' efforts, Alvogen refused to take corrective action. Accordingly, Plaintiffs served a Rule 11 motion. Ex. 27, Opening Brief for Rule 11 Motion. Twenty-one days later, Alvogen finally agreed to withdraw its unfounded allegations. Ex. 28, 2-7-2020 Gutman Letter; D.I. 169 (notice of withdrawal). In addition to besmirching the reputations of the accused inventors and prosecuting attorneys, Alvogen's specious allegations caused Plaintiffs to incur unnecessary fees, including those relating to their Opposition Brief (D.I. 119), Rule 11 motion (Ex. 27), and depositions of prosecution counsel (*see* D.I. 71 (Subpoena to Hostetler and Lewis, et al.)).

***Alvogen's Trial Conduct Drew Admonitions from the Court.*** Alvogen's conduct at trial extended beyond the constantly changing non-infringement and invalidity arguments discussed above. *See supra* pp. 8-13. It included baseless objections and other inappropriate conduct. Indeed, the Court repeatedly

14

admonished Alvogen for its conduct during trial. *E.g.*, Ex. 19, Trial Tr. 285:20-288:17 ("Go ahead and make your argument, but keep in mind you have lost credibility with me because you couldn't have given me a straight answer ten minutes ago when I asked that question."); Ex. 21, Trial Tr. 2093:6-24 ("[Y]our objection is noted. You have no basis to make it and you may have a seat. This is inappropriate, and you have really stretched the bounds of my patience and I think I've been incredibly patient."); 2171:1-2172:18; Ex. 22, Trial Tr. 1624:5-11 ("I don't know how that's defensible on appeal. It just strikes me, it's a frivolous argument, and, to be suggested by the defense, it's one that I'm going to—I would factor in on fees. I can't believe we've spent all this time talking about what some expert said that neither party, neither party has advanced as a claim construction."); 1625:9-19; 1625:3-22 ("I don't want to waste time on post-trial briefing on this. I mean, this is ridiculous in my mind."); Ex. 21, Trial Tr. 1979:18-25.

***Alvogen's Post-Trial Conduct Was Vexatious.*** Alvogen's improper litigation conduct continued after trial. As explained above, Alvogen made no fewer than four previously undisclosed invalidity arguments in its post-trial briefing to which Plaintiffs had to respond. *Supra* pp. 11-13. But Alvogen did not stop there.

Alvogen lodged untimely and frivolous objections to Plaintiffs' proposed findings of fact and to exhibits cited in post-trial briefing. Alvogen even objected to straightforward unobjectionable facts asserted by Plaintiffs. *See* Ex. 29, 1-15-2021

Tr. 40:24-42:2 ("THE COURT:…There's no basis to justify an objection to a finding of fact that this is a patent infringement case, and there's no basis to justify [objecting to] the finding of fact that we had a trial in October."). As the Court observed, these "ridiculous" and "silly objections" were "not a close call" and emblematic of "the way [Alvogen] operated a lot," for example, by "overreach[ing]." *Id.*, 13:13-14:14, 32:19-33:10; *see also id.*, 16:5-18:11.

Alvogen likewise objected to Plaintiffs' reliance on exhibits that were admitted into evidence and discussed at length during trial, including an exhibit the admission of which it expressly agreed to when proposed by the Court. *See* Ex. 29, 1-15-2021 Tr. 37:17-38:2 ("THE COURT: I actually not only did discuss 812 in terms of being an exhibit, but I actually said it should be admitted…. I said, are there any objections to me reading the Dawn study? Mr. Sipes said, no objection here. Mr. Gutman said, no Your honor. I then said, okay…. Include the Dawn study as a joint exhibit in the final exhibit list."). The Court stated that Alvogen's objections had "absolutely no basis" and were "frivolous." *E.g.*, Ex. 29, 1-15-2021 Tr. 40:24-42:2.

***Alvogen Also Engaged in Improper Conduct Outside the Presence of the Court.*** In addition to Alvogen's behavior before the Court, Alvogen's conduct outside the presence of the Court was also vexatious.[3] As one example, at 7:02 PM

---

[3] *See, e.g.*, Ex. 31, C.A. No. 20-560 (D. Del.), 1-14-2021 Tr. 34:18-24 ("I don't think Alvogen is a good team player….").

the evening before a deposition of a third-party inventor that had been scheduled for over a month, Alvogen demanded the witness be made available for an additional 7 hours—for a total of 14 hours. Ex. 30, 11-22-2019 Honigberg Deposition Emails at 1-2. Plaintiffs responded that the witness would be available for only the originally agreed upon 7 hours. *Id*. Alvogen informed Plaintiffs that its attorneys would not board their flights. *Id.* Alvogen did not appear for the deposition. *Id.*

Additionally, Alvogen's other discovery conduct was exceptional, including last minute Rule 30(b)(6) designations, interrogatory responses, and document productions. *See, e.g.*, Ex. 32, 1-13-2020 Letter to Alvogen at 4-8; Ex. 39, Royzman Emails at 1-8. Alvogen's conduct occurred throughout the case, but the circumstances surrounding Plaintiffs' deposition of Alvogen's Rule 30(b)(6) technical witness, Dr. Bhat, are illustrative. Dr. Bhat testified he began preparing to testify on Plaintiffs' deposition notice months in advance of his deposition. Ex. 32, 1-13-2020 Letter to Alvogen at 4; Ex. 40, 12-17-2019 Bhat Tr. 94:22-95:14. Alvogen designated him on only a handful of topics, and ignored Plaintiffs' repeated requests for clarification in the lead up to the deposition. Ex. 32, 1-13-2020 Letter to Alvogen at 4.

Then, at 7:02 PM the night before Dr. Bhat's deposition, Alvogen designated Dr. Bhat on 30 additional topics, spanning a wide range of new and distinct issues. *Id*. at 4-5; Ex. 33, 12-16-2019 Hanna Letter at 2-4; Ex. 34, 12-16-2019 Hanna Email

17

(timestamp). Five hours before Dr. Bhat's deposition was to begin, at 4:05 AM, Alvogen produced hundreds of pages of documents relating to Dr. Bhat's topics. Ex. 32, 1-13-2020 Letter to Alvogen at 5; Ex. 35, 12-17-2019 Golinder 4:05 AM Email (timestamp). At 6:29 AM—two hours before the deposition—Alvogen supplemented its responses to nearly twenty interrogatories, including over 50 pages of new non-infringement contentions describing details of Alvogen's ANDA Product. *See* Ex. 36, 12-17-2019 Golinder 6:29 AM Email; Ex. 9, 12-17-2019 Alvogen's First Suppl. Resp. to Interrog. 1; Ex. 37, Alvogen's First Suppl. Resp. to Interrogs. 2-8; Ex. 38, Alvogen's First Suppl. Responses to Interrogs. 9-25. Notwithstanding Alvogen's heavy reliance on Dr. Bhat in its last-minute interrogatory responses (*see* Interrogatory Nos. 2-8, 9-11, 14-15, 17, 20, and 24-25 in Exs. 37-38), he was entirely unprepared and evasive in answering questions about Alvogen's ANDA Product and its development. *See* Ex. 32, 1-13-2020 Letter to Alvogen at 5-7 (collecting citations to evasive testimony); Ex. 39, Royzman Emails at 1-6 (same).

## C.   Plaintiffs Should Be Awarded Reasonable Attorney Fees

Due to Alvogen's pervasive misconduct throughout this case, Plaintiffs seek full compensation for fees incurred litigating against Alvogen. *See Mathis v. Spears*, 857 F.2d 749, 755 (Fed. Cir. 1988) ("Where, as here, a prevailing party 'has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this

will encompass all hours reasonably expended on the litigation.'" (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983))); *id.* at 754 ("The methodology of assessing a reasonable award under 35 U.S.C. § 285 is within the discretion of the district court.").[4]

Plaintiffs seek an award of attorneys' fees totaling ███████. The Declarations of Christopher Sipes, Irena Royzman, and Jeremy Tigan, filed herewith, set forth the relevant billing practices, provide summaries of the requested fees, and describe the qualifications of each attorney and professional from each firm representing each Plaintiff. Contemporaneously prepared billing entries supporting the claimed fees are also included as appendices to the Declarations.

The total hours billed by Plaintiffs on this matter were reasonable given the complexity of the litigation—for example, litigating Alvogen's numerous invalidity defenses related to four different patent families—which was only amplified by Alvogen's unreasonable litigation positions and conduct. *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553 (2010) (explaining that "the novelty and complexity of

---

[4] An award of attorney fees should also include the reasonable fees expended on litigating the award of attorney fees itself. *See, e.g.*, *Howes v. Med. Components, Inc.*, 761 F. Supp. 1193, 1201 (E.D. Pa. 1990) (awarding attorney fees to plaintiffs under 35 U.S.C. § 285 for "time spent preparing the fee petition"). For that reason, at the conclusion of this briefing at or as otherwise directed by this Court, Plaintiffs will file a supplemental declaration setting forth their reasonable fees relating to this motion.

a case" "presumably are fully reflected in the number of billable hours recorded by counsel"); *see also* Sipes Declaration; Royzman Declaration; Tigan Declaration. Plaintiffs' billing rates are likewise reasonable in light of the quality and expertise of the respective firms, and the prevailing market rates. *See Perdue*, 559 U.S. at 553 (explaining that "the quality of a prevailing party's counsel's representation normally are reflected in the reasonable hourly rate") (internal quotation marks and citation omitted); *see also* Friedlieb Declaration; Jimenez Declaration.

Indeed, the attorney fees at issue here are also reasonable compared to fee awards under 35 U.S.C. § 285 in other patent actions. For example, in *MarcTec*, the court affirmed an award of approximately $4.7 million attorney fees, expenses and expert fees to Johnson & Johnson and Cordis Corporation where the non-prevailing party, among other things, "engaged in vexatious and unjustified litigation conduct that unnecessarily prolonged the proceedings." 664 F.3d at 916. In *Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*, the Court awarded $16.8 million in attorney fees, expenses, and expert fees in a Hatch-Waxman action where, as here, defendants presented "shifting theor[ies]" of patent invalidity and baseless allegations of inequitable conduct. *See* No. 03-cv-8253-DLC, 2007 WL 840368, at *4 (S.D.N.Y. Mar. 21, 2007) ("The defense of an extraordinarily profitable pharmaceutical was at stake here, a drug that had contributed to a revolution in the treatment of a serious and widespread disease."). In *SRI Int'l, Inc. v. Cisco Sys., Inc.*, the Court awarded

approximately $8 million in attorney fees and expenses to the patentees because, like Alvogen, defendants pursued the case in an aggressive and unreasonable manner that created a "substantial amount of work for both [the prevailing party] and the court" that was "needlessly repetitive or irrelevant or frivolous." 13-CV-1534, 2020 WL 1285915, at *5 (D. Del. Mar. 18, 2020) (*aff'd in part, rev'd in part on other grounds*, 14 F.4th 1323 (Fed. Cir. 2021), *cert. denied,* 142 S. Ct. 2732 (2022)).

## D. An Award of Expert Fees Is Warranted Under the Court's Inherent Authority

Plaintiffs have incurred significant expert fees during the case due to Alvogen's "vexatious conduct and bad faith [which] increased the cost of litigation in ways that are not compensated under § 285." *MarcTec*, 664 F.3d at 921 (affirming award of expert fees of $809,788.02 where the district court found that the non-prevailing party had litigated in "bad faith").

Use of experts in circumstances such as these has been found to be "necessary" due to vexatious litigation tactics and can justify an award of expert fees. *See, e.g.*, *Takeda*, 2007 WL 840368, at *13 (awarding over $1 million in expert fees and explaining that "[a]n award of the costs associated with [plaintiffs'] employment of experts [wa]s particularly warranted in this case" because "[t]o analyze fairly and correctly the challenges that the defendants made to the '777 Patent, it was necessary for the Court to understand the principles and issues associated with several scientific disciplines").

21

As explained above, throughout the case, Plaintiffs were repeatedly forced to present unnecessary expert testimony, including infringement reports that went unrebutted and trial testimony on validity issues that were abandoned in post-trial briefing. The Court's trial decision credited and relied on the testimony of Plaintiffs' experts, including Drs. Reider, Rule, Bodmeier and Williams. *See, e.g.*, D.I. 352 at 22, 29, 34, 39, 46, 86-87. Therefore, Plaintiffs should be awarded expert fees in the amount of ▮▮▮▮▮▮. *See* Sipes Declaration.

## VI.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court declare this an exceptional case under 35 U.S.C. § 285, and award Plaintiffs their attorneys' fees, as well as expert fees in this matter.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jeremy A. Tigan*

Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com

OF COUNSEL:

Christopher N. Sipes
Erica N. Andersen
Brianne Bharkhda
Nicholas L. Evoy
Justin Thomas Howell
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001-4956
(202) 662-6000

Alexa Hansen
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105
(415) 591-6000

*Attorneys for Pharmacyclics LLC*

Irena Royzman
Christine Willgoos
Marcus A. Colucci
Jonathan R. Pepin
KRAMER LEVIN NAFTALIS
  & FRANKEL LLP
1177 Avenue of the Americas
New York, NY 10036
(212) 715-9100

*Attorneys for Plaintiffs Pharmacyclics LLC and Janssen Biotech, Inc.*

23

Hannah Lee
Daniel Williams
KRAMER LEVIN NAFTALIS
   & FRANKEL LLP
990 Marsh Road
Menlo Park, CA 94025
(650) 752-1700

*Attorneys for Janssen Biotech, Inc.*

February 6, 2023

## <u>WORD COUNT CERTIFICATION</u>

The undersigned counsel hereby certifies that the foregoing document contains 4,903 words, which were counted by using the word count feature in Microsoft Word, in 14-point Times New Roman font.  The word count includes only the body of the document.  The word count does not include the cover page, tables of contents, or the counsel blocks.

*/s/ Jeremy A. Tigan*

_____

Jeremy A. Tigan (#5239)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 6, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on February 6, 2023, upon the following in the manner indicated:

Melanie K. Sharp, Esquire                                    *VIA ELECTRONIC MAIL*
James L. Higgins, Esquire
YOUNG CONAWAY STARGATT
  & TAYLOR, LLP
1000 North King Street
Wilmington, DE  19801
*Attorneys for Defendants Alvogen Pine Brook*
*LLC and Natco Pharma Ltd.*

Siegmund Y. Gutman, Esquire                              *VIA ELECTRONIC MAIL*
David M. Hanna, Esquire
Michelle M. Ovanesian, Esquire
PROSKAUER ROSE LLP
2029 Century Park East, Suite 2400
Los Angeles, CA  90067-3010
*Attorneys for Defendants Alvogen Pine Brook*
*LLC and Natco Pharma Ltd.*

Gourdin W. Sirles, Esquire                                    *VIA ELECTRONIC MAIL*
PROSKAUER ROSE LLP
One International Place
Boston, MA  02110
*Attorneys for Defendants Alvogen Pine Brook*
*LLC and Natco Pharma Ltd.*

*/s/ Jeremy A. Tigan*
_____
Jeremy A. Tigan (#5239)