IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PHARMACYCLICS LLC and JANSSEN )
BIOTECH, INC.                  )
                               )        C. A. No.:  19-434-CFC-CJB
          Plaintiffs,          )
                               )
          v.                   )        ████████████████████
                               )
ALVOGEN PINE BROOK LLC and     )        Public Version filed March 31, 2023
NATCO PHARMA LTD.,             )
                               )
          Defendants.          )

## DEFENDANTS' ANSWERING BRIEF IN OPPOSITION TO MOTION FOR ATTORNEYS' FEES AND EXPERT FEES

YOUNG CONAWAY STARGATT &          PROSKAUER ROSE LLP
TAYLOR, LLP                       Siegmund Y. Gutman
Melanie K. Sharp (No. 2501)       David M. Hanna
James L. Higgins (No. 5021)       2029 Century Park East, Suite 2400
1000 North King Street            Los Angeles, CA  90067-3010
Wilmington, DE 19801              (310) 557-2900
(302) 571-6600
msharp@ycst.com
jhiggins@ycst.com


*Attorneys for Alvogen Pine Brook LLC and Natco Pharma Ltd.*

Dated:  March 23, 2023

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ..................................................................................................1

LEGAL STANDARDS .........................................................................................3

ARGUMENT .........................................................................................................4

I.     THIS CASE IS NOT EXCEPTIONAL.........................................................4

     A.    Alvogen's Defenses Were Substantively Strong ..................................4

     B.    Alvogen Did Not Engage in Litigation Misconduct. ...........................7

          1.    *There Was No Misconduct with Respect to Claim Construction*.................................................................................7

          2.    *Alvogen Timely Informed Plaintiffs that It Would Not Pursue Non-Infringement Defenses* ............................................9

          3.    *There Was Nothing Improper about Alvogen Narrowing Its Invalidity Defenses*................................................................11

          4.    *Plaintiffs Mischaracterize Alvogen's Inequitable Conduct Defense*......................................................................................12

          5.    *There Was Nothing Improper about Alvogen's Trial Conduct* ..................................................................................13

          6.    *Alvogen's Post-trial Conduct Does Not Make the Case Exceptional*................................................................................15

          7.    *Plaintiffs Mischaracterize Two Discovery Disputes* ................16

II.    Plaintiffs Failed to Establish a Causal Connection Between Alvogen's Actions and the Fees Requested ....................................................................18

III.   Plaintiffs Are Not Entitled to Expert Fees......................................................21

CONCLUSION ...................................................................................................22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Amsted Indus. Inc. v. Buckeye Steel Castings Co.*,
    23 F.3d 374 (Fed. Cir. 1994) ...........................................................................21

*Anacor Pharms., Inc. v. Lupin Ltd.*,
    2023 WL 2011343 (D. Del. 2023)................................................................5, 6

*AstraZeneca AB v. Aurobindo Pharma Ltd.*,
    232 F.Supp.3d 636 (D. Del. 2017)....................................................................6

*Bayer Intellectual Prop. GmbH v. Aurobindo Pharma Ltd.*,
    No. 15-902 (D. Del. 2017)...............................................................................10

*Bayer Intellectual Prop. GmbH v. Taro Pharm. Indus. Ltd.*,
    No. 17-462 (D. Del. 2018)...............................................................................10

*Beckman Instruments, Inc. v. LKB Produkter AB*,
    892 F.2d 1547 (Fed. Cir. 1989) ......................................................................20

*Belcher Pharms., LLC v. Hospira, Inc.*,
    2022 WL 606075 (D. Del. 2022).......................................................................4

*Bio-Rad Labs. Inc. v. 10X Genomics, Inc.*,
    2019 WL 3322322 (D. Del. 2019).....................................................................5

*FireBlok IP Holdings, LLC v. Hilti, Inc.*,
    855 F. App'x 735 (Fed. Cir. 2021) ...................................................................4

*Forest Labs. v. Abbott Labs.*,
    339 F.3d 1324 (Fed. Cir. 2003) ......................................................................17

*In re J&J Derivative Litig.*,
    2013 WL 11228425 (D.N.J. 2013) ..................................................................20

*In re Personalweb Techs., LLC Pat. Litig.*,
    2021 WL 796356 (N.D. Cal. 2021) .................................................................18

*In re Rembrandt Techs. Pat. Litig.*,
    899 F.3d 1254 (Fed. Cir. 2018) .............................................................*passim*

*Indivior Inc. v. Alvogen Pine Brook Inc.*,
  2020 WL 1955435 (D. Del. 2020) ................................................................5, 12

*Indivior Inc. v. Dr. Reddy's Labs.*,
  2020 WL 1955433 (D. Del. 2020) .......................................................................3

*Indivior Inc. v. Mylan Techs., Inc.*,
  232 F.Supp.3d 650 (D. Del. 2017) ......................................................................8

*Intellectual Ventures I LLC v. Trend Micro Inc.*,
  944 F.3d 1380 (Fed. Cir. 2019) ........................................................................18

*MarcTec, LLC v. Johnson & Johnson*,
  2010 WL 680490 (S.D. Ill. 2010) .......................................................................6

*Mathis v. Spears*,
  857 F.2d 749 (Fed. Cir. 1988) ...........................................................................6

*Medtronic Navigation, Inc. v. BrainLAB Medizinische
  Computersysteme GmbH*,
  603 F.3d 943 (Fed. Cir. 2010) ........................................................................3, 5

*Mitsubishi Tanabe Pharma Corp. v. Sandoz*,
  No. 17-5319 (D.N.J. 2019) ...............................................................................10

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
  521 F.3d 1351 (Fed. Cir. 2008) .........................................................................9

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
  572 U.S. 545 (2014).............................................................................................3

*Rambus Inc. v. Infineon Techs. Ag*,
  318 F.3d 1081 (Fed. Cir. 2003) .......................................................................18

*SFA Sys., LLC v. Newegg Inc.*,
  793 F.3d 1344 (Fed. Cir. 2015) .....................................................................3, 14

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
  254 F.Supp.3d 680 (D. Del. 2017).......................................................................7

*Stragent, LLC v. Intel Corp.*,
  2014 WL 6756304 (E.D. Tex. 2014).....................................................................5

*Takeda Chem. Indus. v. Mylan Labs., Inc.*,
     459 F.Supp.2d 227 (S.D.N.Y. 2006) ............................................................6, 21

*Tyco Healthcare Grp. LP v. Mut. Pharm. Co.*,
     2016 WL 3965201 (D.N.J. 2016) ......................................................................5

*Wi-LAN Inc. v. Sharp Elecs. Corp.*,
     2022 WL 1224901 (D. Del. 2022)..............................................................18, 19

**STATUTES**

35 U.S.C. § 285 .........................................................................................3, 4, 7, 21

## <u>INTRODUCTION</u>

Not satisfied with their hard-fought victory in the underlying patent litigation, Plaintiffs ask the Court to award them all of their attorneys' fees—more than $10 million—as well as a half-million dollars in expert fees.  It is exceedingly rare for a court to award a prevailing party all of its attorneys' fees in a patent case.  And in the unusual instances where such relief has been granted, it is typically because the losing party's positions were so beyond the pale and so contrary to the evidence that it had no business litigating the case.  Plaintiffs do not come close to making such an extraordinary showing here.

Far from being "exceptional," this was a typical patent case where the defendants (collectively, "Alvogen") in good faith asserted defenses to infringement. The Court did not view those defenses as frivolous but instead held a seven-day trial and addressed the defenses on their merits in a ninety-one-page decision.   The Federal Circuit did not view Alvogen's defenses as frivolous, either; rather than issue a summary affirmance, the Federal Circuit delivered a lengthy opinion analyzing but ultimately rejecting Alvogen's defenses.

Because Alvogen's defenses were not frivolous, Plaintiffs resort to arguing that they should recoup every dollar spent on this case because Alvogen supposedly committed "litigation misconduct."   That position is wrong both factually and legally.

As a factual matter, there was no misconduct.  As in any high-stakes patent dispute, both sides fought vigorously to protect their rights.  Plaintiffs cherry-pick statements from the Court and the parties' correspondence out of context to mischaracterize Alvogen's conduct as "vexatious."  In each instance, however, Plaintiffs' recitation of the facts is misleading and incomplete, which is emblematic of how hard-fought this litigation has been.  In many cases, Alvogen had to take reasonable steps to protect itself from Plaintiffs' aggressive litigation tactics.

As a legal matter, Plaintiffs' request to recover all of their fees on account of discrete incidents of alleged "misconduct" runs headlong into the Federal Circuit's teaching that "a finding of exceptionality based on litigation misconduct usually does *not* support a full award of attorneys' fees." *In re Rembrandt Techs. Pat. Litig.*, 899 F.3d 1254, 1277-78 (Fed. Cir. 2018) (emphasis added).  That's because there must be a causal connection between any misconduct established and the fees awarded. *Id.*  Even assuming that specific "misconduct" occurred—and, to be clear, it did not—Plaintiffs must establish a causal connection between that misconduct and the fees requested, which they have not done.

The bottom line is that Alvogen's defenses were not frivolous, and Alvogen litigated this case in good faith and well within the bounds of appropriate conduct. Plaintiffs twist the record, recklessly attack the reputation of Alvogen's counsel, and request more than $10 million without basis, perhaps hoping that the Court will at

least "split the baby" and award them a substantial sum. That cynical approach should not be countenanced. The motion should be denied.

## LEGAL STANDARDS

In patent litigation, a court may award a prevailing party reasonable attorneys' fees in "exceptional cases." 35 U.S.C. § 285. An exceptional case is the "rare" and "unusual" one that "stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). Whether a case is exceptional depends on the totality of circumstances. *Id.*

The fact that a party did not prevail does not suggest that its positions lacked substantive strength. *SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1348 (Fed. Cir. 2015). Rather, a claim or defense lacks substantive strength only if it was brought in bad faith or is "exceptionally meritless." *Indivior Inc. v. Dr. Reddy's Labs.*, 2020 WL 1955433, at *3 (D. Del. 2020); *see also Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersysteme GmbH*, 603 F.3d 943, 954 (Fed. Cir. 2010) (vacating fee award because party's positions were "not frivolous or objectively unreasonable").

Absent a showing that the losing party's claims or defenses lacked substantive strength, § 285 is triggered only in "the rare case in which a party's unreasonable

conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees." *FireBlok IP Holdings, LLC v. Hilti, Inc.*, 855 F. App'x 735, 739 (Fed. Cir. 2021) (quoting *Octane*, 572 U.S. at 555).

If a case is found to be "exceptional," a court has the discretion to (*i*) decline to award any fees or (*ii*) calculate an appropriate fee award. *Belcher Pharms., LLC v. Hospira, Inc.*, 2022 WL 606075, at *1 (D. Del. 2022) (Stark, J.). There must be a causal connection between the actions that make the case exceptional and any fees awarded. *Rembrandt*, 899 F.3d at 1277-78. Accordingly, "a finding of exceptionality based on litigation misconduct usually does not support a full award of attorneys' fees." *Id.* at 1278.

## ARGUMENT

## I. THIS CASE IS NOT EXCEPTIONAL.

Plaintiffs have not shown that this case is "exceptional" in any sense of the word. Alvogen's defenses were brought in good faith and bear no resemblance to the frivolous positions that led to fee awards in the cases cited by Plaintiffs. And each of Plaintiffs' allegations of "misconduct" is unfounded, as shown below.

### A. Alvogen's Defenses Were Substantively Strong.

Plaintiffs have not shown that Alvogen's defenses were frivolous. To the contrary, it required a seven-day trial and ninety-one pages of analysis for the Court to adjudicate those defenses and twenty-six pages for the Federal Circuit to affirm.

*See* Ex. A (Opinion); D.I. 391, Ex. 1 (Fed. Cir. Opinion).  Other defendants asserted many of the same defenses.  *See, e.g.*, Ex. B (Sipes Declaration) ¶14.  As the Court observed towards the end of trial, "[t]here are a lot of difficult, challenging, interesting issues in this case."  Ex. C (10-20-20-Tr.) 1625:20-21.

In many instances, the Court resolved Alvogen's defenses by crediting Plaintiffs' experts over Alvogen's.  *E.g.*, Ex. A (Opinion) 21-22, 24, 29-30, 34, 85-87.  A case is not exceptional where a factfinder resolves difficult questions by crediting one party's experts.  *See Indivior Inc. v. Alvogen Pine Brook Inc.*, 2020 WL 1955435, at *3 (D. Del. 2020); *Tyco Healthcare Grp. LP v. Mut. Pharm. Co.*, 2016 WL 3965201, at *4 (D.N.J. 2016).  Plaintiffs' failure to seek leave to move for summary judgment suggests that even they did not view Alvogen's defenses as frivolous.  *See Stragent, LLC v. Intel Corp.*, 2014 WL 6756304, at *5 (E.D. Tex. 2014) (Dyk, J., sitting by designation); *Bio-Rad Labs. Inc. v. 10X Genomics, Inc.*, 2019 WL 3322322, at *7 (D. Del. 2019), *vac'd in part on other grounds*, 967 F.3d 1353 (Fed. Cir. 2020); *see also Medtronic*, 603 F.3d at 954 ("[O]ne might well wonder how a case could be so frivolous as to warrant sanctions if it has sufficient merit to get to trial." (quoting *Browning v. Kramer*, 931 F.2d 340, 345 (5th Cir.1991)).

The substantive strength of Alvogen's defenses strongly militates against a finding of exceptionality.  *See Anacor Pharms., Inc. v. Lupin Ltd.*, 2023 WL

2011343, at *1 (D. Del. 2023) (denying fee motion based in part on "substantive strength" of losing party's arguments); *AstraZeneca AB v. Aurobindo Pharma Ltd.*, 232 F.Supp.3d 636, 649 (D. Del. 2017) (finding that the "absence of" a "frivolous suit or willful infringement . . . weighs against an award"). It also distinguishes this case from those cited in Plaintiffs' brief where a court awarded the prevailing party all of its attorneys' fees under § 285. In each of those cases, unlike here, the losing party brought or defended a case without any reasonable basis whatsoever.

For example, in *Mathis v. Spears*, the plaintiff pursued "a totally unwarranted suit and two unwarranted appeals" despite "irrefutable evidence of invalidity and unenforceability" of its patents. 857 F.2d 749, 751, 754 (Fed. Cir. 1988). Similarly, in *MarcTec, LLC v. Johnson & Johnson*, the plaintiff lost at summary judgment on its entire "baseless patent infringement suit"; among other problems, the patent was limited to stents manufactured through heat bonding, but the accused product undisputedly was *not* a stent and did *not* require heat bonding in its manufacture. 2010 WL 680490, at *9-10 (S.D. Ill. 2010), *aff'd* 664 F.3d 907 (Fed. Cir. 2012). In *Takeda Chemical Industries v. Mylan Laboratories, Inc.*, the defendant's paragraph IV notice letter—which formed the basis for the entire litigation—asserted a single obviousness defense that was "so devoid of merit and so completely fails to establish a prima facie case of invalidity that it must be described as 'baseless.'" 459 F.Supp.2d 227, 235 (S.D.N.Y. 2006), *aff'd* 549 F.3d 1381 (Fed. Cir. 2008); *see also*

*SRI Int'l, Inc. v. Cisco Sys., Inc.*, 254 F.Supp.3d 680, 722-23 (D. Del. 2017) (noting that this Court "has rarely awarded fees pursuant to § 285" but finding the case exceptional because the losing party pursued defenses that "were contrary to the court's rulings or [defendant's own] internal documents" and took other "frivolous" positions).

None of those cases awarding a party all of its fees is on point because the defenses that Alvogen pursued were not frivolous. And although Plaintiffs accuse Alvogen of making specific "frivolous" *arguments* during the litigation, (*i*) those allegations are wrong as shown below; and (*ii*) the allegations do not undermine the substantive strength of Alvogen's defenses in any event.

### B.     Alvogen Did Not Engage in Litigation Misconduct.

Unable to demonstrate that Alvogen's defenses were frivolous, Plaintiffs seek $10 million in fees based on a handful of discrete incidents during the two-and-a-half-year litigation that they describe as "[e]xemplary instances" of "misconduct." D.I.390 ("Brief") 6. Plaintiffs' allegations are false. In each instance, Alvogen acted appropriately to protect its rights.

#### 1.     *There Was No Misconduct with Respect to Claim Construction.*

Alvogen could not participate in claim construction in the Capsule Action because Plaintiffs had not sued Alvogen by that point. Accordingly, Alvogen was not barred by res judicata from seeking to clarify the meaning of key claim terms.

Indeed, consistent with its professional obligations, it was incumbent upon Alvogen's counsel to be heard on claim construction and to preserve claim-construction arguments for appeal.   There is nothing exceptional about a party seeking to clarify the meaning of claim terms that had already been construed in a prior litigation to which it was not a party.   *See, e.g.*, *Indivior Inc. v. Mylan Techs., Inc.*, 232 F.Supp.3d 650, 654 (D. Del. 2017).

Contrary to Plaintiffs' contention, Alvogen did not "demand[] unnecessary claim construction."   Brief 6.   At the *Markman* hearing, Alvogen succeeded at narrowing the parties' disputes.   *E.g.*, Ex. D (*Markman* Tr.) 4:13-19:9.   Alvogen also prevailed on its proposed construction of "crystalline form" and its argument that the Court should reject a construction of "pharmaceutically acceptable salt" proffered by Plaintiffs.   *Id.* at 26:1-27:19, 28:1-36:23.

Plaintiffs quote out of context the Court's comments concerning a dispute over a single claim limitation to argue that the entire *Markman* hearing was a waste of time.   Brief 7-8.   In the quoted excerpt, the Court *inquired* whether Alvogen was repeating arguments that were made in the Capsule Action.   In response, Alvogen explained that its position was different from that of the capsule defendants and was based on "intrinsic evidence that was not before Your Honor in the capsule action."   Ex. D (*Markman* Tr.) 38:4-46:19.

Plaintiffs' discussion of the October 10, 2019 call with the Court is inaccurate. Brief 7. The purpose of that call was to request guidance regarding the Court's practice with respect to Plaintiffs' proposed "plain and ordinary meaning" constructions to streamline disputes before the fast-tracked trial. As Alvogen explained, Plaintiffs declined to state their view of what the "plain and ordinary meaning" of the claim terms were, a strategy which some judges prohibit to avoid mischief later in the case. *See* Ex. E (10-10-19-Tr.) 19:2-21; *see also O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008) ("A determination that a claim term 'needs no construction' or has the 'plain and ordinary meaning' may be inadequate when a term has more than one 'ordinary' meaning or when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute."). Alvogen acknowledges that the Court described the request for a call as "a strategic error or tactical error." Ex. D (*Markman* Tr.) 74:20-75:1. The Court nevertheless recognized that "given the unusual [expedited] calendar, I'm not faulting you for deciding this might be a case to raise this issue." Ex. E (10-10-19-Tr.) 26:25-27:8.

### 2. *Alvogen Timely Informed Plaintiffs that It Would Not Pursue Non-Infringement Defenses.*

Plaintiffs' infringement discussion mischaracterizes the record. Brief 8-11. When Plaintiffs requested that Alvogen stipulate to infringement in July 2019, Alvogen had several non-infringement arguments based on certain proposed claim

constructions.  *See* Ex. F (Supp. Obj.) 6-63.  Although the Court ultimately rejected Alvogen's constructions, its positions were not frivolous (and the Court never suggested they were).[1]

Following claim construction, Alvogen repeatedly represented to Plaintiffs that it would stipulate to infringement and that infringement expert reports were unnecessary.  *E.g.*, Ex. G (02-12-20-email) 1-2; Ex. M (03-11-20-email) 1.  In fact, more than a month before expert reports were due, Alvogen drafted a stipulation of infringement covering the claims that Plaintiffs ultimately asserted.  Ex. H (draft stipulation).  The draft stipulated to infringement provided that the asserted patents were not later held to be invalid or unenforceable, using language practically identical to stipulations Plaintiffs had filed in other cases.  *See Bayer Intellectual Prop. GmbH v. Taro Pharm. Indus. Ltd.*, No. 17-462, ECF 109, ¶¶1-2 (D. Del. July 24, 2018) (Ex. I); *Bayer Intellectual Prop. GmbH v. Aurobindo Pharma Ltd.*, No. 15-902, ECF 236, ¶¶1-7 (D. Del. May 5, 2017) (Ex. J); *Mitsubishi Tanabe Pharma Corp. v. Sandoz*, No. 17-5319, ECF 100, ¶¶1-2 (D.N.J. June 11, 2019) (Ex. K).

Plaintiffs, however, delayed the filing of the stipulation.  They first took nearly three weeks to provide edits to the draft.  Ex. L (03-04-20-email with attachment) 1.

---

[1]  It is irrelevant whether Alvogen failed to include certain non-infringement assertions in its Paragraph IV letter (Brief 8) because positions taken in those letters are not binding.  *See* Ex. P (09-04-2019-Tr.) 18:2-6.

They then unreasonably insisted on removing the language about invalidity and unenforceability that they had previously used in other cases. *Id.* at 5. While the parties negotiated over the stipulation's language, Alvogen emphasized that "Plaintiffs know the claims that Defendants are willing to stipulate are infringed based on the current claim construction, *so there is no reason for Plaintiffs' experts to address those claims in their reports.*" Ex. M (03-11-20-email) 1 (emphasis added). Plaintiffs chose to ignore Alvogen's representations and serve unnecessary infringement reports anyway. Any costs associated with those reports were self-inflicted.[2]

### 3. There Was Nothing Improper about Alvogen Narrowing Its Invalidity Defenses.

Plaintiffs' discussion of Alvogen's invalidity defenses is misleading. Brief 11-13. The reason Alvogen asserted "nearly fifty" invalidity defenses at one point is that Plaintiffs were unreasonably asserting infringement of fifteen different patent claims. Ex. N (09-23-20-Tr.) 76:19-78:13; Ex. Q (Proposed Pretrial Order) ¶ 45. As the Court pointed out, it was Plaintiffs' burden first to narrow their asserted claims; "then we can talk about the defendants narrowing their invalidity

---

[2] Based on Plaintiffs' unnecessary infringement reports, Alvogen asserted a non-infringement defense to the '857 patent. The Court agreed with Alvogen's approach and declined to preclude the defense. Ex. N (09-23-20-Tr.) 34:24-37:11, 44:18-45:5. It later rejected the defense because it was not raised during claim construction. Ex. O (10-14-20-Tr.) 312:12-313:13.

contentions."  Ex. N (09-23-20-Tr.) 78:11-13; *id.* at 81:10-12 ("[P]laintiff, you are the plaintiff, so you've got to go first" at narrowing).  When Plaintiffs finally narrowed their claims, Alvogen narrowed its invalidity defenses accordingly.[3]

After both sides proffered evidence and the Court made factual findings adverse to Alvogen (*see, e.g.*, Ex. R (10-21-20-Tr.) 1978:7-10, 2070:16-20, 2083:15-24), Alvogen further narrowed its defenses.  There is nothing exceptional about that decision, which saved the parties and the Court post-trial work.  *Cf. Indivior*, 2020 WL 1955435, at *4 & n.4 ("Choosing to narrow the issues for trial does not constitute litigation misconduct.").

### 4.   *Plaintiffs Mischaracterize Alvogen's Inequitable Conduct Defense.*

Plaintiffs'   contention   that   Alvogen   "knowingly   pressed   unfounded" inequitable-conduct claims is itself unfounded.  Brief 13-14.  Alvogen sought to add inequitable-conduct defenses and counterclaims to its complaint during the period when amendment was permissible and shortly after it learned the relevant facts in discovery.  *See* Ex. S (Brief Supporting Amendment) 1-3, 12-13, 16.  Alvogen contended that inequitable conduct occurred because prior office-action rejections— which were highly relevant to the patent applications at issue—were not specifically

---

[3] Plaintiffs' self-serving email requesting clarity on Alvogen's trial strategy does not show obfuscation.  *Contra* Brief 11 (citing Ex. 41).  Plaintiffs received Alvogen's expert reports and thus had notice of Alvogen's invalidity positions.

identified to the patent office but instead were buried in thousands of pages of disclosures.  Alvogen's position is well-supported because a party does not satisfy its duty of candor when it buries relevant materials in a voluminous information-disclosure statement.  *See* Ex. T (Reply Supporting Amendment) 6-7 (citing cases).  Plaintiffs' contention that the inequitable-conduct theory was "baseless" because references were disclosed misses the point that a buried disclosure is insufficient.

Plaintiffs recognized the implications that an inequitable-conduct finding would have not only on this case but others.  They thus strong-armed Alvogen to withdraw its motion to amend by threatening a Rule 11 motion.  Ex. U (Gutman-Letter) 1-3.  Given the posture of the case, Alvogen determined that the prudent strategy to avoid losing the trial date (a paramount consideration in ANDA cases) was to focus on its other defenses, so it capitulated.  *Id.*  But the proposed inequitable-conduct amendment was well grounded in law and fact.  *See* Exs. S, T, U.

### 5.    *There Was Nothing Improper about Alvogen's Trial Conduct.*

The trial lasted seven days.  Many witnesses testified and countless objections were raised and resolved by the Court.  At the close of the trial, the Court commended both parties: "I think there were very trying circumstances.  Everybody did a great job.  So let me commend you all for that . . . . I thought everybody did a

13

really nice job." Ex. V (10-21-20-Tr.) 2169:4-2170:2. The Court's closing words were "Well done. Well tried." *Id.* at 2173:5-6.

Plaintiffs nevertheless characterize Alvogen's trial conduct as improper because in a handful of instances over seven days the Court disagreed with certain positions taken by Alvogen. Brief 14-15. Needless to say, there is nothing exceptional about a party making arguments that a court rejects. *See SFA*, 793 F.3d at 1348.

Plaintiffs provide no argument concerning why Alvogen's trial positions supposedly make this case exceptional. Brief 14-15. Instead, they rely on soundbites taken out of context. Take, for example, Plaintiffs' quotation from pages 285-288 of the trial transcript. Brief 15. Following the quoted excerpt, Alvogen's counsel clarified why he had misunderstood the Court's question; counsel then answered the question; and the Court responded: "All right. You've made your good argument." Ex. W (10-13-20-Tr.) 288:1-291:24. Of Plaintiffs' six citations to the trial transcript, three discuss the same issue. *See* Ex. X (10-20-20-Tr.) 1624:5-11; 1625:9-19; 1625:3-22. That colloquy ended with Alvogen agreeing to meet and confer with Plaintiffs to resolve the issue, which is what occurred. *Id.* at 1625:23-1626:16. Nothing about Alvogen's conduct during trial makes this case exceptional.

### 6.    *Alvogen's Post-trial Conduct Does Not Make the Case Exceptional.*

Alvogen admitted to good-faith errors in connection with its post-trial objections to Plaintiffs' proposed exhibit list and findings of fact.  *See* Ex. Y (1-15-21-Tr.) 52:15-53:8.  The Court ruled that if a document was substantively discussed by a witness and in a party's post-trial brief, it would be admitted into evidence.  *See id.* at 30:9-31:16.  Following trial, the Court found that Alvogen overreached when it objected to certain exhibits proposed by Plaintiffs.  The Court thus gave Alvogen a choice:  (*i*) drop its objections and concede to Plaintiffs' exhibit list; or (*ii*) have another round of briefing on exhibit lists and pay certain of Plaintiffs' fees.  *Id.* at 44:21-45:11.  Alvogen chose *not* to pursue any of its objections and thereby avoid fee-shifting. Ex. Z (1-19-21-email).  Given that decision, it would be inequitable to impose the same fees that Alvogen avoided by dropping its objections.[4]

With respect to findings of fact, Alvogen was concerned about waiver, so it mechanically objected to any proposed fact lacking support in the briefing—even if the fact was self-evident.  Ex. Y (1-15-21-Tr.) 8:5-9:12.   Alvogen's counsel

---

[4] Plaintiffs mischaracterize Alvogen's objection to the Dawn study.  Brief 16. Alvogen did not object to the Court reading the study submitted by Plaintiffs. Alvogen instead argued that it was unclear whether Dr. Rule was referring to that study in his testimony and objected to its use to impeach Alvogen's expert.  Ex. Y (1-15-21-Tr.) 38:5-10.  The Court did not rely on the study in its opinion.

apologized to the Court for applying what it understood was the Court's standard too strictly, and the Court accepted the apology. *Id.* at 52:15-53:8.

Plaintiffs are wrong that the case is exceptional because Alvogen raised certain arguments post-trial that the Court found were waived. For one thing, the same can be said about Plaintiffs. *See id.* at 19:25-20:5 ("Mr. Sipes, I don't think you get to pursue that. It wasn't raised sufficiently in detail, so I'm not going to consider that secondary consideration."). In all events, Plaintiffs cite no case found to be exceptional because a party raised arguments that were deemed waived.

### 7.    *Plaintiffs Mischaracterize Two Discovery Disputes.*

Plaintiffs also mischaracterize the record with respect to two discovery issues. Brief 16-17. Dr. Honigberg's deposition was noticed in the Capsule Action, which had not yet been consolidated with the Tablet Action. Ex. AA (11-21-19-emails) 2. The Court directed Plaintiffs to make witnesses noticed in the Capsule Action available for longer than the seven hours allotted by the rules if their testimony (like Honigberg's) had independent relevance to the Tablet Action. *See* Ex. P (09-04-19-Tr.) 55:2-6 ("So if Dr. Smith was limited to X hours for all the defendants in the capsule case and then Alvogen gets to—they get additional time to, separate from all the other defendants, to question Dr. Smith with respect to tablet issues . . . ."). In violation of the Court's directive, Plaintiffs refused to make Honigberg available to Alvogen beyond the seven hours allotted to the capsule defendants. Ex. AA (11-

16

21-19-emails) 1-2.  Under those circumstances, Alvogen was well within its rights to seek additional time to question Honigberg.

Plaintiffs' discussion of Dr. Bhat's December 2019 deposition is similarly misleading.  Bhat's deposition occurred three days before the close of fact discovery at a point when Plaintiffs were seeking additional document and written discovery. Ex. BB (12-17-19 Order) ¶ 9; Ex. CC (Andersen-Letter) 1-3; Ex. DD (12-13-19-email) 1-2; Ex. FF (Hanna-Letter) 1-4.  The timing of Alvogen's production was the result of the pending close of discovery.  If Plaintiffs believed they were prejudiced by the timing of Alvogen's production or Bhat's supposed inability to answer certain questions, they could have moved to reopen Bhat's deposition.  They did not.

\*     \*     \*     \*     \*

"It is not contemplated that the recovery of attorney's fees will become an ordinary thing in patent suits."  *Forest Labs. v. Abbott Labs.*, 339 F.3d 1324, 1329 (Fed. Cir. 2003) (quoting S. Rep. No. 79-1503 (1946)).  Considering the totality of the circumstances, this case is nowhere near exceptional.  Alvogen's defenses were strong, and its conduct throughout the two-and-a-half-year litigation was reasonable and appropriate.  If fees are assessed against Alvogen under the unremarkable facts present here, it would have a chilling effect on a generics manufacturer's ability to litigate its reasonable defenses.  Such manufacturers would be incentivized to settle and thus avoid a punitive fee award.  Plaintiffs' motion should be denied.

## II.   PLAINTIFFS FAILED TO ESTABLISH A CAUSAL CONNECTION BETWEEN ALVOGEN'S ACTIONS AND THE FEES REQUESTED.

Even if Plaintiffs had shown that this case is exceptional, which they have not, they failed to establish a causal connection between Alvogen's actions and the fees they request.  They are thus not entitled to any recovery for that additional reason.

There must be a causal connection between the actions that make a case exceptional and any fees awarded.  *Rembrandt*, 899 F.3d at 1277-78.  Accordingly, "a finding of exceptionality based on litigation misconduct usually does not support a full award of attorneys' fees" because misconduct typically does not cause the *entire amount* of the prevailing party's fees.  *Id.*; *see also Rambus Inc. v. Infineon Techs. Ag*, 318 F.3d 1081, 1106 (Fed. Cir. 2003) ("In cases deemed exceptional only on the basis of litigation misconduct, however, the amount of the award must bear some relation to the extent of the misconduct."); *Intellectual Ventures I LLC v. Trend Micro Inc.*, 944 F.3d 1380, 1384 (Fed. Cir. 2019) (if a case is "not exceptional from start to finish," recovery is limited to fees related to "particular conduct and circumstances that stood out and made a case exceptional").  When exceptionality is based on misconduct, "[t]he court's fundamental job is to determine whether a given legal fee—say, for taking a deposition or drafting a motion—would or would not have been incurred in the absence of the sanctioned conduct."  *In re Personalweb Techs., LLC Pat. Litig.*, 2021 WL 796356, at *5 (N.D. Cal. 2021); *see also Wi-LAN Inc. v. Sharp Elecs. Corp.*, 2022 WL 1224901, at *2 (D. Del. 2022) (limiting period

18

of fee award because there was "no causal connection between [Plaintiff's] misconduct and the fees expended by Defendants" outside that period).

Plaintiffs have not provided the Court with any basis for awarding fees because they have not shown that any particular allegation of "misconduct" caused them to incur any particular fee. Plaintiffs try to evade the causation requirement by arguing that Alvogen's alleged misconduct was so "pervasive" that it permeated the entire case. But that is simply not true. Each of Plaintiffs' allegations of misconduct is false. But even assuming some are true, they did not permeate the case such that they caused *all* of Plaintiffs' legal fees. This case was litigated over two-and-a-half years. There were more than three-dozen depositions, millions of pages of discovery produced, several hearings, a seven-day trial, and extensive post-trial briefing. There is no basis for attributing all of Plaintiffs' fees over the entire thirty-six-month litigation to a few allegations of misconduct—even if misconduct could be established.[5]

That is particularly true because several other defendants asserted the same defenses as Alvogen. Accordingly, even if Alvogen had never been a party,

---

[5] In rare cases, "rampant misconduct" that "severely affected every stage of the litigation" has supported a full award of attorneys' fees. *See Rembrandt*, 899 F.3d at 1279. But those cases (none of which are cited in Plaintiffs' brief) are readily distinguishable because there, unlike here, the party's misconduct began before the outset of litigation and infected every stage of the case.

19

Plaintiffs would have had to address those defenses, incurring the same fees they now seek from Alvogen. *See, e.g.*, Ex. B (Sipes Declaration) ¶15 (identifying Covington's alleged fees attributable to common tasks); Ex. EE (Royzman Declaration) ¶20 (identifying time entries billed across all defendants). A fee award is improper where, as here, a party "would have incurred substantial legal expenses regardless of [any] misconduct." *Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1553 (Fed. Cir. 1989).

Plaintiffs also improperly seek fees from two national, lead-counsel law firms that unreasonably duplicated efforts, particularly during the trial phase, when only one firm ran the trial and only two defendants remained. *See, e.g.*, *In re J&J Derivative Litig.*, 2013 WL 11228425, at *13 (D.N.J. 2013) ("[C]ourts have long maintained that when multiple law firms are involved, it is difficult to assess whether that element of the claim is reasonable or not," noting that the party seeking fees should categorize tasks by project, which Plaintiffs did not do).

Plaintiffs further improperly seek fees for work related to issues common to several defendants. *E.g.*, Brief Appendix A at 49 (entries related to Sandoz contentions and Reider and Williams (common-issue witnesses)), 55 (entries relating to "expert materials" and Reider and Lepore (common-issue witnesses)); D.I.394, Ex. A, at PDF page 129 (attributing time to "Defendants"), 137-141 (entries related to Reider and Rule (common-issue witnesses)). Alvogen reserves the right

to challenge specific time entries should Plaintiffs belatedly attempt to establish causation.

### III.    Plaintiffs Are Not Entitled to Expert Fees.

Plaintiffs are not entitled to expert fees, either.  A court can award expert fees only if a party acted in bad faith or its misconduct rises to the level of "fraud on the court or an abuse of the judicial process."  *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 23 F.3d 374, 378-79 (Fed. Cir. 1994).  In *Amsted*, the Federal Circuit vacated an expert-fee award even though the defendant "copied the '269 patent, lacked a good faith belief that the '269 patent was invalid, denied infringement in the face of evidence to the contrary, and burdened the court with numerous motions" because its behavior did not constitute fraud on the court or abuse of judicial process. *Id.*  Expert fees "should be very much the exception, not the rule" and are reserved for "those highly unusual cases in which the pertinent statutory remedies are plainly inadequate to address the misconduct at issue."  *Takeda*, 549 F.3d at 1392 (Bryson, J., concurring).

In support of their expert-fee request, Plaintiffs rehash the same allegations of "misconduct" that they claim makes the case exceptional under § 285.  Plaintiffs are not entitled to expert fees for several reasons.  *First*, as explained above, Alvogen did not engage in misconduct.  *Second*, none of the misconduct alleged would constitute bad faith, fraud on the court, or abuse of judicial process in any event.

*Third*, there is no causal connection between the supposed misconduct and the expert fees incurred, including with respect to infringement reports that Alvogen repeatedly told Plaintiffs were unnecessary.  *See* Point I.B.2, *supra*.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' motion should be denied.


YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ James L. Higgins*
Melanie K. Sharp (No. 2501)
James L. Higgins (No. 5021)
1000 North King Street
Wilmington, DE  19801
(302) 571-6600
msharp@ycst.com
jhiggins@ycst.com

PROSKAUER ROSE LLP
Siegmund Y. Gutman
David M. Hanna
2029 Century Park East, Suite 2400
Los Angeles, CA  90067-3010
(310) 557-2900


*Attorneys for Alvogen Pine Brook LLC and Natco Pharma Ltd.*

Dated:  March 23, 2023

## CERTIFICATION OF COMPLIANCE
## WITH TYPE, FONT, AND WORD LIMITATIONS

The undersigned hereby certifies that the foregoing document contains 4,979 words, which were counted using the word count feature in Microsoft Word 2016, in 14-point Times New Roman font.  The word count includes only the body of the document, and does not include the cover page or counsel blocks.


Dated: March 23, 2023

/s/ James L. Higgins
James L. Higgins (No. 5021)

## <u>CERTIFICATE OF SERVICE</u>

I, James L. Higgins, Esquire, hereby certify that on March 23, 2023, I caused

to be electronically filed a true and correct copy of Defendants' Answering Brief in

Opposition to Motion for Attorneys' Fees and Expert Fees with the Clerk of the

Court using CM/ECF, which will send notification to the following counsel of

record:

Jack B. Blumenfeld
Jeremy A. Tigan
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com

I further certify that on March 23, 2023, I caused a copy of the foregoing

document to be served on the above-listed counsel of record and on the following

non-registered participants in the manner indicated:

**<u>BY E-MAIL</u>**

Christopher N. Sipes
Erica N. Andersen
Brianne Bharkhda
Eric R. Sonnenschein
Nicholas L. Evoy
Justin Thomas Howell
Covington & Burling LLP
One CityCenter
850 Tenth Street NW
Washington, DC  20001-4956
csipes@cov.com
eandersen@cov.com

Irena Royzman
Christine Willgoos
Cristina L. Martinez
Marcus A. Colucci
Kramer Levin Naftails & Frankel LLP
1177 Avenue of the Americas
New York, NY  10036
(212) 715-9100
iroyzman@kramerlevin.com
cwillgoos@kramerlevin.com
cmartinez@kramerlevin.com
mcolucci@kramerlevin.com

bbharkhda@cov.com
esonnenschein@cov.com
cchang@cov.com
nevoy@cov.com
jhowell@cov.com

Alexa Hansen
David Denuyl
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA  94105
ahansen@cov.com
ddenuyl@cov.com

*Attorneys for Pharmacyclics LLC*

Hannah Lee
Daniel Williams
Kramer Levin Naftails & Frankel LLP
990 Marsh Road
Menlo Park, CA  94025
(650) 752-1700
hlee@kramerlevin.com
ddwilliams@kramerlevin.com

*Attorneys for Janssen Biotech, Inc.*

*/s/ James L. Higgins*
James L. Higgins (No. 5021)

30217832.1