IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PHARMACYCLICS LLC and<br>JANSSEN BIOTECH, INC.,<br><br>        Plaintiffs,<br><br>        v.<br><br>ALVOGEN PINE BROOK LLC and<br>NATCO PHARMA LTD.,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>) C.A. No. 19-434 (CFC) (CJB)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR
MOTION FOR ATTORNEYS' FEES AND EXPERTS' FEES**

## **TABLE OF CONTENTS**

|   |   |   | Page |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | ARGUMENT | | 1 |
| | A. | Alvogen's Defenses Were Exceptionally Weak | 2 |
| | B. | Alvogen's Conduct Throughout the Case Was Exceptional | 4 |
| | C. | The Fees Sought by Plaintiffs Are Attributable to Alvogen | 10 |
| | D. | Plaintiffs Are Entitled to Expert Witness Fees | 11 |
| III. | CONCLUSION | | 11 |

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Beckman Instruments, Inc. v. LKB Produkter AB*,
    892 F.2d 1547 (Fed. Cir. 1989) ........................................................................7, 9

*Drop Stop LLC v. Jian Qing Zhu*,
    757 F. App'x 994 (Fed. Cir. 2019) .........................................................................9

*Eagleview Techs., Inc. v. Xactware Sols., Inc.*,
    522 F. Supp. 3d 40, 69 (D.N.J. 2021) ...................................................................3

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
    572 U.S. 545 (2014) ..............................................................................................1

*In re Rembrandt Techs. LP Pat. Litig.*,
    899 F.3d 1254 (Fed. Cir. 2018) ....................................................................10, 11

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
    14 F.4th 1323 (Fed. Cir. 2021) ..............................................................1, 3, 7, 10

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
    C.A. No. 13-1534-RGA, 2020 WL 1285915 (D. Del. Mar. 18, 2020) ..............10

*Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*,
    549 F.3d 1381 (Fed. Cir. 2008) ............................................................................2

## I.     INTRODUCTION

Alvogen does not deny that Plaintiffs are the prevailing parties in this action or that Plaintiffs' attorneys' and experts' fees are reasonable. Instead, Alvogen repeatedly misstates the record and the law in an attempt to justify its misconduct. Alvogen's baseless arguments and vexatious conduct infected the entire case and forced Plaintiffs to incur unwarranted attorneys' and experts' fees, for which they should be compensated.

## II.    ARGUMENT

Alvogen suggests that a case is exceptional "only if" claims were brought in "bad faith" or were "exceptionally meritless." D.I. 414 ("Opp."), 3. But the Supreme Court has expressly rejected such requirements, which improperly "superimpose[] an inflexible framework onto statutory text that is inherently flexible." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554-55 (2014). Instead, it has held that "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigation position … or the unreasonable manner in which the case was litigated" as determined "considering the totality of the circumstances." *Id.* at 554. This case stands out from others on both counts. *See, e.g.*, *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 14 F.4th 1323, 1332 (Fed. Cir. 2021) (affirming full fees where defendant's "entire case was weak, yet it pursued the case aggressively and in an unreasonable manner anyway") (citation

omitted); *Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*, 549 F.3d 1381, 1390 (Fed. Cir. 2008) (affirming full fees where defendants pursued a "baseless" case and engaged in "litigation misconduct"). Alvogen's constantly-changing substantive positions were extraordinarily weak. And, far from just "a handful of discrete incidents" (Opp. 7), Alvogen engaged in unreasonable and vexatious conduct throughout the entire case on nearly every issue. D.I. 390 ("Br."), 6-18.

### A.   Alvogen's Defenses Were Exceptionally Weak

Alvogen's defenses were exceptionally weak. ***None*** of its ***ten*** claim constructions were adopted by the Court.[1] Br. 6-8. ***None*** of Alvogen's non-infringement defenses had any reasonable basis. Alvogen ultimately ***stipulated*** to infringement of three of the four patents (D.I. 273), and the Court observed that its only non-infringement defense at trial was "frivolous" and "would factor in on fees." D.I. 390, Ex. 22 at 1624:5-11; Br. 8-11. ***None*** of the countless invalidity theories Alvogen raised throughout the case had merit. Br. 11-13. Alvogen's failure to win on ***any*** of its theories belies any claim of substantive strength. Alvogen attempts to distinguish *Mathis*, *MarcTec*, and *Takeda* based on the losing parties having litigated claims "without any reasonable basis" (Opp. 6-7)—but Alvogen did the same thing here.

---

[1] Alvogen's suggestion (Opp. 8) that it "prevailed" or "succeeded" during claim construction is wrong. Alvogen's proposals were uniformly rejected.

Alvogen argues its defenses were "substantively strong" simply because the case went to trial. Opp. 4-5. Not so. Courts have routinely found cases exceptional notwithstanding the need for trial. *See, e.g.*, *SRI*, 14 F.4th at 1331-32 (exceptional case finding based on pre-trial, trial, and post-trial conduct); *Eagleview Techs., Inc. v. Xactware Sols., Inc.*, 522 F. Supp. 3d 40, 69 (D.N.J. 2021) (exceptional case based on litigating "in a manner that ignored the weakness of … positions, advanced unreasonable arguments, and forced plaintiffs to spend significant sums rebutting those unreasonable positions and argument" where the "conduct occurred repeatedly, and at nearly every stage of the trial"). Contrary to Alvogen's suggestion (Opp. 5), this is not a close case where the Court "resolve[d] difficult questions by crediting one party's experts." D.I. 380 at 2070:10-20 (Court finding Lepore "overreach[ed] as a scientist"), 2083:15-24 (Court finding Grossbard's opinions "lack[ed] credibility" and "strained credulity"); D.I. 378 at 1199:7-23 (Fassihi testifying he did not compare the prior art to the claims).

Alvogen argues that Plaintiffs "did not view Alvogen's defenses as frivolous" because no summary judgment motions were filed. Opp. 5. But summary judgment motions are disfavored in Hatch-Waxman cases in this District, and were not permitted here as of right. D.I. 40, ¶18. Indeed, Plaintiffs made repeated demands that Alvogen drop numerous defenses because they were frivolous, but Alvogen refused to do so. Ex. 42; D.I. 390, Ex. 15 at 1-4, Ex. 41 at 1. Alvogen's procedural

3

success in frustrating efficient disposal of this case is not a reflection of the substantive merit of its defenses.

### B. Alvogen's Conduct Throughout the Case Was Exceptional

Alvogen's unreasonable litigation positions and vexatious conduct infected all aspects of the proceedings, and make this case exceptional.

***Claim Construction.*** For the better part of a year, Alvogen dragged Plaintiffs and the Court through a burdensome *Markman* process for ten claim terms—four of which had already been construed in the Capsule Action. *Compare* D.I. 59 *with* C.A. No. 18-192, D.I. 74; *see also* D.I. 127 (104 pages); D.I. 128 (over 790 pages of exhibits). The Court underscored Alvogen's duplicative arguments. Br. 6-8.

Alvogen argues it had "professional obligations" to preserve arguments for appeal. Opp. 7-8. But Alvogen could have preserved any objection to the Capsule Action constructions without demanding *Markman* briefing and a hearing on issues that had already been decided. Moreover, Alvogen never appealed any claim construction issue.

Alvogen also suggests that it somehow "prevailed" and "succeeded at narrowing the parties' [claim construction] disputes." Opp. 8. But ***none*** of Alvogen's constructions were adopted. *Compare* D.I. 59 *with* D.I. 168. The Court adopted eight of Plaintiffs' constructions, and modified Plaintiffs' constructions for the remaining two terms. Far from "prevail[ing]" on the "crystalline form" term (Opp. 8), the Court

4

*rejected* Alvogen's proposal and construed the term consistent with its plain and ordinary meaning, as Plaintiffs proposed. D.I. 415, Ex. D at 34:17-36:23; D.I. 127 at 71. Moreover, during briefing, Plaintiffs proposed an alternative construction of "pharmaceutically acceptable salt" that the Court *adopted*. D.I. 415, Ex. D at 27:5-19; D.I. 127 at 17, 50-51.

*Non-Infringement.* As evidenced by its Paragraph IV Letters, Alvogen had no basis to pursue non-infringement at any point in this case. Alvogen quibbles that these Letters are "not binding" (Opp. 10, n.1), but that misses the point. Alvogen's failure to disclose any non-infringement arguments in its Paragraph IV Letters shows that Alvogen lacked any good faith basis to dispute infringement.

Alvogen concocted its claim constructions in an attempt to dispute clear infringement. But as Alvogen tacitly acknowledges, after the *Markman* hearing, Alvogen had ***no basis whatsoever*** to assert non-infringement of any asserted claim. Opp. 9-10. A reasonable litigant would have immediately stipulated to infringement. Alvogen did not, but instead forced Plaintiffs to needlessly litigate infringement for the next eight months. Br. 8-11.

Alvogen attempts to shift the blame for its failure to stipulate onto Plaintiffs. Opp. 10-11. Its account is highly misleading. Shortly after the *Markman* hearing, Plaintiffs narrowed their list of asserted claims and requested that Alvogen stipulate to infringement. D.I. 390, Ex. 10 at 1. In response, Alvogen proposed its draft

5

stipulation, which addressed only a subset of claims **chosen by Alvogen** and ignored the rest (including the two claims of the '857 Patent that were tried). *Compare id.* at 2 *with* D.I. 415, Ex. H at 2.[2] Alvogen had no basis to argue non-infringement for ***any*** asserted claim. Rather than negotiate an appropriate stipulation with Plaintiffs, Alvogen held Plaintiffs' infringement case hostage.

Alvogen also blames Plaintiffs for not abandoning their infringement expert reports based on Alvogen's email stating there was "no reason" to serve them. Opp. 11. Given the burden of proof, Plaintiffs had no choice but to protect themselves until Alvogen agreed to an infringement stipulation. Alvogen, however, refused to do so until the eve of trial for three of the patents. And infringement of the '857 Patent was tried and determined by the Court, confirming Plaintiffs were correct in not taking Alvogen at its word.

***Invalidity.*** Alvogen unreasonably pursued a large number of invalidity defenses, only to abandon numerous theories during and after trial, while simultaneously injecting numerous new theories into the case. Br. 11-13. Alvogen's hide-the-ball approach demonstrates a "*strategy* of vexatious activity" that makes

---

[2] Alvogen cites a discovery ruling regarding the '857 Patent to suggest that its non-infringement arguments were appropriate. At trial, the Court concluded Alvogen's arguments were waived and untimely. D.I. 390, Ex. 21 at 1979:18-25. Even then, Alvogen continued to dispute infringement based on a new "failure of proof" argument (*id.* at 1980:1-25) which the Court correctly found "was a gotcha move." D.I. 380 at 1975:1-2.

this case exceptional. *Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1552 (Fed. Cir. 1989) (emphasis original).

Alvogen blames its large number of invalidity defenses on the number of claims asserted by Plaintiffs, Opp. 11-12, but the record demonstrates otherwise. Indeed, one month before trial, Alvogen was asserting ***forty-eight*** different invalidity defenses just for the five claims that were asserted at trial. D.I. 390, Ex. 15 at 2-6 (11 defenses for '309 Patent, claim 9; 19 defenses for '090 Patent, claim 2; 10 defenses for '455 Patent, claim 5; 8 defenses for '857 Patent, claims 30, 37). And although Alvogen claims to have "narrowed its invalidity defenses," it fails to mention this narrowing largely occurred ***during and after trial***. *See SRI*, 14 F.4th at 1332 (affirming district court's exceptional case finding where defendant's "aggressive tactics … includ[ed] maintaining nineteen invalidity theories until the eve of trial but ultimately presenting only two at trial").

***Alvogen's Baseless Inequitable Conduct Allegations.*** Alvogen incorrectly asserts that its inequitable conduct allegations were "well-supported" and that it only withdrew them because Plaintiffs "strong-armed" Alvogen. Opp. 13. But if Alvogen believed its claims were meritorious, it was free to oppose Plaintiffs' Rule 11 motion. Alvogen did not do so, not because of procedural efficiency (*id.*), but because its allegations were baseless.

7

Even now, Alvogen misrepresents its allegations to avoid scrutiny by the Court. Citing only the *reply* brief to its motion to amend, Alvogen states its inequitable conduct allegations were based on "burying" "office-action rejections." Opp. 12-13. But Alvogen's motion and, more importantly, its proposed pleading, alleged the applicants and prosecuting attorneys deliberately *withheld* these rejections—an argument that was frivolous. D.I. 92 at 1; D.I. 88, Ex. 3 ¶245; D.I. 88, Ex. 4 ¶217. Alvogen's allegations were unfounded, harassing, and made in bad faith.

*Alvogen's Trial Conduct.* At trial, Alvogen made frivolous arguments and wasted time, as the Court repeatedly recognized. Br. 14-15. Alvogen accuses Plaintiffs of "rely[ing] on soundbites taken out of context" (Opp. 14), but never provides the context it claims Plaintiffs omitted. On the contrary, it is Alvogen that misrepresents the record. For example, Alvogen points to a colloquy involving the Court's rejection of Alvogen's non-infringement argument for the '857 Patent as being "frivolous" and "one that … would factor in on fees." *Id.* (citing Ex. X, 1624:5-11). Alvogen argues its misconduct was cured because it "agree[d] to meet and confer." Opp. 14. But Plaintiffs were forced to prepare and use their trial time to elicit infringement testimony; and Alvogen only agreed to meet and confer *after* the defense had been precluded. While "making arguments" that are ultimately rejected

may not always make a case exceptional (*id.*), here, Alvogen engaged in a "*strategy of vexatious activity.*" *Beckman*, 892 F.2d at 1552.

***Alvogen's Post-Trial Conduct.*** Alvogen argues that it should not be held accountable for vexatious post-trial conduct (Br. 15-16) because it "apologized" to the Court. Opp. 15-16. But Alvogen only did so after the Court identified Alvogen's positions as "ridiculous." D.I. 390, Ex. 29 at 14:5-7. Alvogen's "apology" does not erase the time and resources the Court and Plaintiffs were forced to spend addressing these issues. *Id.* at 33:9-10 ("So I'm glad to hear that you are withdrawing it now, but it's too late. I already had to work on this."). Alvogen also cites one instance (from the entire litigation) where the Court found a waiver by Plaintiffs (Opp. 16), but precedent supports an exceptional case finding where the defendant repeatedly "rais[ed] … waived defenses." *Drop Stop LLC v. Jian Qing Zhu*, 757 F. App'x 994, 999 (Fed. Cir. 2019).

***Alvogen's Out-of-Court Conduct.*** Alvogen's attempts to justify its exceptional discovery conduct (Br. 16-18) are likewise unavailing. With respect to Dr. Honigberg, Alvogen did not "seek additional time" for the deposition. Opp. 17. Rather, Alvogen used the deposition itself as a threat to try to extract concessions from Plaintiffs and Dr. Honigberg (a third-party witness) just hours before the deposition was scheduled to occur. With respect to Dr. Bhat, Alvogen suggests that its last-minute discovery dump before the deposition was appropriate because it ***also***

9

occurred just three days before the close of fact discovery. *Id*. The last-minute timing makes the conduct worse, not better.

### C. The Fees Sought by Plaintiffs Are Attributable to Alvogen

Plaintiffs are entitled to full compensation for Alvogen's baseless arguments and pervasive misconduct. Br. 18-21. Alvogen's tactics infected all phases of the case, from the pleadings (*id.*, 13-14) to discovery (*id.*, 16-18) to trial and post-trial (*id.*, 14-16). Similarly, Alvogen's baseless arguments implicated all issues, including claim construction (*id.*, 6-8), infringement (*id.*, 8-11), and validity (*id.*, 11-13). Alvogen's vexatious pursuit of its weak case makes the entire case exceptional.

Alvogen argues that Plaintiffs have not shown that "any particular allegation of 'misconduct' caused [Plaintiffs] to incur any particular fee." Opp. 19. Alvogen's pervasive misconduct makes the accounting Alvogen seeks unrealistic. *SRI Int'l, Inc. v. Cisco Sys., Inc.*, C.A. No. 13-1534-RGA, 2020 WL 1285915, at *5 (D. Del. Mar. 18, 2020), *aff'd in relevant part*, 14 F.4th 1323 (Fed. Cir. 2021) ("It would be impossible to isolate the improper conduct and award partial fees because the problem is that [defendant's] entire case was weak, yet it pursued the case aggressively and in an unreasonable manner anyway."). Moreover, this type of "tedious, line-by-line investigation" of Plaintiffs' fees is "not require[d]." *In re Rembrandt Techs. LP Pat. Litig.*, 899 F.3d 1254, 1280 (Fed. Cir. 2018). Rather, "the

essential goal ... is to do rough justice, not to achieve auditing perfection." *Id.* (citation and alterations omitted).

Alvogen's other criticisms also fall short. Alvogen suggests it should not be responsible for fees incurred on issues that other defendants also litigated. Opp. 19-20. However, Plaintiffs apportioned the fees incurred on common issues in the Capsule Action. D.I. 392, ¶¶14-18; D.I. 394, ¶¶21-22; D.I. 393, ¶¶11-13. Alvogen also complains that Plaintiffs used two lead-counsel firms (Opp. 20), but each of the two plaintiffs is entitled to counsel. Alvogen provides no evidence to support its claim that work was "unreasonably duplicated" (*id.*).

### D. Plaintiffs Are Entitled to Expert Witness Fees

Alvogen does not specifically object to Plaintiffs' expert fees, but argues that awarding expert fees would be improper. Opp. 21-22. On the contrary, Alvogen's vexatious conduct and bad faith unreasonably compounded Plaintiffs' expert fees. Br. 21-22. Moreover, due to Alvogen's hide-the-ball litigation strategy Plaintiffs' experts had to address myriad defenses never presented to the Court. Alvogen disputes that a "causal connection" exists (Opp. 22), but Plaintiffs apportioned their expert fees and seek only fees attributable to Alvogen's bad faith and misconduct.

## III. CONCLUSION

Plaintiffs respectfully request that the Court declare this an exceptional case, and award Plaintiffs their attorneys' and experts' fees.

11

|  |  |
|---|---|
| OF COUNSEL:<br><br>Christopher N. Sipes<br>Erica N. Andersen<br>Brianne Bharkhda<br>Nicholas L. Evoy<br>Justin Thomas Howell<br>COVINGTON & BURLING LLP<br>One CityCenter<br>850 Tenth Street NW<br>Washington, DC 20001-4956<br>(202) 662-6000<br><br>Alexa Hansen<br>COVINGTON & BURLING LLP<br>Salesforce Tower<br>415 Mission Street, Suite 5400<br>San Francisco, CA 94105<br>(415) 591-6000<br><br>*Attorneys for Pharmacyclics LLC*<br><br>Irena Royzman<br>Christine Willgoos<br>Marcus A. Colucci<br>Jennifer Liu<br>Jonathan R. Pepin<br>KRAMER LEVIN NAFTALIS<br>  & FRANKEL LLP<br>1177 Avenue of the Americas<br>New York, NY 10036<br>(212) 715-9100 | MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br><br>*/s/ Jeremy A. Tigan*<br>_____<br>Jack B. Blumenfeld (#1014)<br>Jeremy A. Tigan (#5239)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE  19899<br>(302) 658-9200<br>jblumenfeld@morrisnichols.com<br>jtigan@morrisnichols.com<br><br>*Attorneys for Plaintiffs Pharmacyclics LLC and Janssen Biotech, Inc.* |

12

Hannah Lee
Daniel Williams
KRAMER LEVIN NAFTALIS
  & FRANKEL LLP
990 Marsh Road
Menlo Park, CA 94025
(650) 752-1700

*Attorneys for Janssen Biotech, Inc.*

April 6, 2023

## **WORD COUNT CERTIFICATION**

The undersigned counsel hereby certifies that the foregoing document contains 2,495 words, which were counted by using the word count feature in Microsoft Word, in 14-point Times New Roman font. The word count includes only the body of the document. The word count does not include the cover page, tables of contents, or the counsel blocks.

*/s/ Jeremy A. Tigan*
_____
Jeremy A. Tigan (#5239)

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 6, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on April 6, 2023, upon the following in the manner indicated:

| | |
|---|---|
| Melanie K. Sharp, Esquire<br>James L. Higgins, Esquire<br>YOUNG CONAWAY STARGATT &<br>TAYLOR, LLP<br>1000 North King Street<br>Wilmington, DE  19801<br>*Attorneys for Defendants Alvogen Pine Brook LLC and Natco Pharma Ltd.* | *VIA ELECTRONIC MAIL* |
| Siegmund Y. Gutman, Esquire<br>David M. Hanna, Esquire<br>Michelle M. Ovanesian, Esquire<br>PROSKAUER ROSE LLP<br>2029 Century Park East, Suite 2400<br>Los Angeles, CA  90067-3010<br>*Attorneys for Defendants Alvogen Pine Brook LLC and Natco Pharma Ltd.* | *VIA ELECTRONIC MAIL* |

Gourdin W. Sirles, Esquire  *VIA ELECTRONIC MAIL*
PROSKAUER ROSE LLP
One International Place
Boston, MA  02110
*Attorneys for Defendants Alvogen Pine Brook LLC and Natco Pharma Ltd.*

*/s/ Jeremy A. Tigan*
_____
Jeremy A. Tigan (#5239)

2